Amber M. Carson
Texas Bar No. 24075610
London England
Texas Bar No. 24110313
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:    (214) 954-4135
Facsimile:    (214) 953-1332
Email:        acarson@grayreed.com
              lengland@grayreed.com

*Counsel to Wildcat Lending Fund One, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 23-40880-elm7** |
| **JOSHUA LEE PATTERSON,** | § | |
| | § | **Chapter 7** |
| Debtor. | § | |

### WILDCAT LENDING FUND ONE, LP'S
### UNOPPOSED MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### AGAINST REAL PROPERTY LOCATED IN TARRANT COUNTY, TEXAS

> **PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**
>
> **ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 501 W. 10TH STREET, ROOM 147, FORT WORTH, TX 76102-3643 BEFORE CLOSE OF BUSINESS WITHIN 14 DAYS OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

Wildcat Lending Fund One, LP ("Wildcat"), for its Unopposed Motion for Relief from the

Automatic Stay Against Real Property Located in Tarrant County, Texas (the "Motion"),

respectfully represents:

## Requested Relief

1.      Wildcat holds a security interest in certain real property (the "Property") located at 1028 E. Bowie Street, Fort Worth, Texas 76104.  Wildcat requests that the Court lift the automatic stay (to the extent it applies) as to the Property, effective as of the Petition Date, and permit Wildcat to exercise its rights under the Note and Deed of Trust (both as defined below).  Joshua Lee Patterson (the "Debtor") does not own the Property, and his bankruptcy schedules indicate that he lives elsewhere.  *See* Docket No. 1 at p. 2.  Thus, it does not appear that the Property is property of the Debtor's estate or his primary residence.  However, Wildcat files this Motion out of an abundance of caution given that the Debtor includes the Property in his bankruptcy schedules, *see id.* at p. 14.

2.      Wildcat has conferred with the Trustee and counsel to the Debtor, and both have indicated that they are unopposed to the requested relief.

## Jurisdiction

3.      On March 30, 2023 (the "Petition Date"), the Debtor filed this chapter 7 case in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

## Background

5.      Rolltide Realty, LLC ("Rolltide"), a company owned by the Debtor, *see* Docket No. 1 at p. 17 ¶ 19, entered into that certain *Real Estate Lien Note* dated May 23, 2022 (the "Note") with Wildcat, under which Rolltide agreed to pay Wildcat $139,500.00, plus interest. *See* **Exhibit A**, pp. 19–21.  The amount owing under the Note was secured by a deed of trust covering the Property, also dated May 23, 2022 (the "Deed of Trust").  *See id.*, pp. 22–30.  On the

4853-5060-8993.2

same date, the Debtor entered into a guaranty for the payment of the Note. *See id*. pp. 57–65. On

May 24, 2022, Wildcat electronically recorded the Deed of Trust. *See* **Exhibit B**.

6.      On February 23, 2023, the Note matured, and Rolltide defaulted under its terms.

On February 27, 2023, notice of default and demand for payment were sent to the Debtor and

Rolltide. *See* **Exhibit C**. Rolltide failed to remedy its default, and thus, Wildcat initiated

foreclosure proceedings. *See* **Exhibit D**. On April 4, 2023, Wildcat held a foreclosure sale.

*See* **Exhibit D**. Wildcat did not have notice of the Debtor's bankruptcy filing at that time. Upon

notice of the Debtor's chapter 7 case, Wildcat ceased foreclosure proceedings and has not recorded

the Property deed.

7.      As of the Petition Date, at least $145,510.48 remains outstanding under the Note.

*See* **Exhibit E**. The Debtor's bankruptcy schedules list Wildcat as holding a $139,500.00 secured

claim, the original value of the loan. *See* Docket No. 1 at p. 36. The Debtor also states that the

value of the Property is $157,700.00. *See id*. at pp. 24, 36. The Debtor's bankruptcy schedules

further indicate that the Debtor intends to surrender the Property. *See id.* at pp. 31, 68.

### Basis for Requested Relief

8.      Pursuant to 11 U.S.C. § 362(d)(1), the automatic stay may be lifted for cause.

Cause, for purposes of relief from the automatic stay, is not defined under the Bankruptcy Code,

granting the Court discretion to determine whether cause exists. *See Bonneville Power Admin. v.*

*Mirant Corp. (In re Mirant)*, 440 F.3d 238, 253 (5th Cir. 2006) (quoting *Little Creek Dev. Co. v.*

*Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

Although "cause" is not defined in the Bankruptcy Code, courts have interpreted it as inherently

broad and flexible. *See, e.g.*, *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303 (5th Cir. 2005);

*In re Tex. State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995) ("'Cause' is an

intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.").

9.      To the extent the automatic stay applies to the Property, sufficient cause exists to lift the stay, effective as of the Petition Date, to allow Wildcat to complete foreclosure on the Property and record the Property deed.  The Debtor does not hold legal title to the Property—the Property is owned by Rolltide.  *See* **Exhibit A**.  Thus, the Debtor does not have equity in the Property.  Further, the Debtor has expressed his intent to surrender the Property.

10.      The Debtor and the Trustee are unopposed to the requested relief.

WHEREFORE, secured creditor Wildcat Lending Fund One, LP requests that the Court enter an order, substantially in the form attached hereto as **Exhibit F**, terminating the automatic stay as to the Property, and granting it such other relief to which it may be entitled at law or equity.

Respectfully submitted this 23rd day of May, 2023.

**GRAY REED**

By:  */s/ Amber M. Carson*
        Amber M. Carson
        Texas Bar No. 24075610
        London England
        Texas Bar No. 24110313
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:   (214) 954-4135
Facsimile:   (214) 953-1332
Email:        acarson@grayreed.com
                lengland@grayreed.com

*Counsel to Wildcat Lending Fund One, LP*

4853-5060-8993.2

## Certificate of Conference

I hereby certify that (a) on May 18, 2023, I conferred with Debtor's counsel, Christopher Anderson, via email regarding the relief requested in this Motion and (b) on April 8 and 11, and May 19, 2023, I conferred with the chapter 7 trustee, Shawn K. Brown, via telephone, email, and in person, and that both parties indicated that they are unopposed to the relief requested herein.

*/s/ Amber M. Carson*
Amber M. Carson

## Certificate of Service

I hereby certify that on May 23, 2023, the foregoing document was served via the following methods to the parties and counsel listed below.

***Chapter 7 Trustee:***
Shawn K. Brown
Shawn@browntrustee.com

***Debtor's Counsel:***
Christopher Anderson
Allmand Law
canderson@allmandlaw.com

***Debtor***
Joshua Lee Patterson
1910 Crestridge Dr.
Arlington, TX 76013

***U.S. Trustee***
Erin Schmidt
Trial Attorney
Erin.Schmidt2@usdoj.gov

***Lienholder***
Wendy Burgess - Tax Accessor Collector
PO Box 961018
Fort Worth, TX 76161

***NOA Party***
Tarrant County
c/o Sherrel K. Knighton
dallas.bankruptcy@lgbs.com

*/s/ Amber M. Carson*
Amber M. Carson

5

4853-5060-8993.2

## **Exhibit A**

**Real Estate Lien Note**

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

**B. Type of Loan**

| 1. ☐ FHA   2. ☐ FmHA   3. ☐ Conv Unins | 6. File Number | 7. Loan Number | 8. Mortgage Ins Case Number |
|---|---|---|---|
| 4. ☐ VA   5. ☐ Conv Ins.   6. ☐ Seller Finance | GF22387SL | 2205170000 | |
| 7. ☒ Cash Sale. | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Rolltide Realty, LLC<br>1910 Crestridge Dr<br>Arlington, TX 76013 | William H Carrell<br>6312 Inca Rd,<br>Fort Worth, TX 76116 | Wildcat Lending Fund One, LP<br>4800 Dexter Drive<br>Plano, TX 75093 |

| G. Property Location | H. Settlement Agent Name |
|---|---|
| MORNINGSIDE TERRACE ADDITION Block 1 Lot 7<br>1028 E Bowie Street<br>Fort Worth, TX 76104 | BNT of Texas, LLC<br>530 E. Southlake Blvd, Suite 140<br>Southlake, TX 76092  Tax ID: 27-3737461<br>Underwritten By: Agents National Title Insurance Company |

| | Place of Settlement | I. Settlement Date |
|---|---|---|
| | BNT of Texas, LLC<br>530 E. Southlake Blvd., Suite 140<br>Southlake, TX 76092 | 5/23/2022<br>Fund: 5/23/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | $155,000.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $7,698.31 | 403. | |
| 104. Assign fee to | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City property taxes | | 406. City property taxes | |
| 107. County property taxes | | 407. County property taxes | |
| 108. MUD Taxes | | 408. MUD Taxes | |
| 109. School property taxes | | 409. School property taxes | |
| 110. Flood Insurance | | 410. Flood Insurance | |
| 111. Other Taxes | | 411. Other Taxes | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | $162,698.31 | **420. Gross Amount Due to Seller** | |
| **200. Amounts Paid By Or in Behalf Of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit or earnest money | $2,000.00 | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | $139,500.00 | 502. Settlement Charges to Seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Payoff of first mortgage loan    to | |
| 205. | | 505. Payoff of second mortgage loan   to | |
| 206. Deposit held by | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Option refund | | 509. Option refund | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City property taxes | | 510. City property taxes | |
| 211. County property taxes   01/01/22 thru 05/23/22 | $667.73 | 511. County property taxes   01/01/22 thru 05/23/22 | |
| 212. MUD Taxes | | 512. MUD Taxes | |
| 213. School property taxes | | 513. School property taxes | |
| 214. Flood Insurance | | 514. Flood Insurance | |
| 215. Other Taxes | | 515. Other Taxes | |
| 216. | | 516. | |
| 217. | | 517. Exchange Proceeds Payble<br>to Rattikin | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $142,167.73 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | $162,698.31 | 601. Gross Amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $142,167.73 | 602. Less reductions in amt. due seller (line 520) | |
| **303. Cash From Borrower** | $20,530.58 | **603. Cash  Seller** | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following:  • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services;
• Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate;  • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.
The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.
This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The information requested does not lend itself to confidentiality.

## L. Settlement Charges

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| **700. Total Sales/Broker's Commission based on price** | | @ % = | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. | | | | |
| 704. Commission to Sellers Agent | to | The Ohana Investment Group | | |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Loan Origination Fee % | to | Wildcat Lending Fund One, LP | $2,790.00 | |
| 802. Loan Discount % | to | | | |
| 803. Processing Fee | to | Wildcat Lending LLC | $950.00 | |
| 804. Credit Report | to | Wildcat Lending Fund One, LP | $30.00 | |
| 805. Internal Doc Review Fee | to | Wildcat Lending LLC | $150.00 | |
| 806. Lender's Attorney Fees | to | Gray Reed & McGraw LLP | $300.00 | |
| 807. Appraisal Fee | to | John Kirchen | $400.00 | |
| 808. Flood Certification Fee | to | Wildcat Lending Fund One, LP | $15.00 | |
| **900. Items Required by Lender To Be Paid in Advance** | | | | |
| 901. Interest from 5/23/2022 to 6/1/2022 @ $42.59/day | | | $383.31 | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to | WCL Insurance Services LLC | $834.00 | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard insurance | months @ | $69.50 per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ | $142.03 per month | | |
| 1005. MUD Taxes | months @ | per month | | |
| 1006. School property taxes | months @ | per month | | |
| 1007. Flood Insurance | months @ | per month | | |
| 1008. Other taxes | months @ | per month | | |
| 1009. | 0 | months @ | | |
| 1011. Aggregate Adjustment | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee | to | BNT of Texas, LLC | $400.00 | |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | BNT of Texas, LLC | | |
| 1104. Title insurance binder | to | BNT of Texas, LLC | | |
| 1105. Document preparation | to | Stephen M. Gerdes II, Attorney at Law | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | BNT of Texas, LLC | | |
| (includes above items numbers: | | ) | | |
| 1108. Title insurance | to | BNT of Texas, LLC | $1,222.00 | |
| (includes above items numbers: | | ) | | |
| 1109. Lender's coverage | $139,500.00/$170.00 | | | |
| 1110. Owner's coverage | $155,000.00/$1,122.00 | | | |
| 1111. Recording Services | to | BNT of Texas, LLC | | |
| 1112. Courier/Messenger Fee | to | BNT of Texas, LLC | | |
| 1113. Tax certificates | to | United Tax Service | | |
| 1114. Guaranty Fee | to | Texas Title Insurance Guaranty Association | $4.00 | |
| 1115. T-30 Amendment Tax Exception | to | BNT of Texas, LLC | $20.00 | |
| 1116. T-27 Assignment of Rents/Lease | to | BNT of Texas, LLC | | |
| 1117. T-3 Down Date - Binder | to | BNT of Texas, LLC | $50.00 | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording Fees Deed $38.00 ; Mortgage $62.00 ; Rel | to BNT of Texas E-recording | | $100.00 | |
| 1202. City/county tax/stamps Deed ; Mortgage | to BNT of Texas E-recording | | | |
| 1203. State tax/stamps Deed ; Mortgage | to BNT of Texas E-recording | | | |
| 1204. Recording Fees - Assignment of Rents | to | BNT of Texas E-recording | $50.00 | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. 1031 Tax Deferred Exchange Intermediary | to | Rattikin Exchange Services, Inc. | | |
| 1302. 2021 Taxes | to | | | |
| 1303. Home warranty (estimate) | to | TBD | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | $7,698.31 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

Rolltide Realty, LLC

By Joshua Patterson

### SETTLEMENT AGENT CERTIFICATION

The HUD-1 Settlement Statement which I have prepared is a true and accurate
account of this transaction. I have caused the funds to be disbursed in
accordance with this statement.

Emily Street

Settlement Agent                                               Date

**Warning:** It is a crime to knowingly make false statements to the United
States on this or any other similar form. Penalties upon conviction can include
a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and
Section 1010.

Previous Editions are Obsolete                    Page 2                    form **HUD-1** (3/86)
                                                                            Handbook 4305.2

**BN**

BNT of Texas, LLC.
**BNT of Texas, LLC**
**530 E. Southlake Blvd, Suite 140**
**Southlake, TX 76092**
**817-865-1707**

File Number: **GF22387SL**

## COMPLIANCE AND TAX PRORATION AGREEMENT

CLOSING DATE: **May 23, 2022**                    RE: FILE #: **GF22387SL**

| | |
|---|---|
| SELLERS: | **William H Carrell** |
| BUYERS: | **Rolltide Realty, LLC** |
| PROPERTY ADDRESS: | **1028 E Bowie Street, Fort Worth, TX 76104** |
| CLOSING AGENT: | **BNT of Texas, LLC** |

**We, the undersigned Seller(s) and Buyers(s) of the above captioned property, hereby acknowledge that the following are conditions regarding the transfer of the above captioned property:**

1.    That all contingencies set forth in the Contract of Sale have been complied with.

2.    That the proration of taxes as shown by the closing statement on this date has been made on the basis of: *(Chose one below)*

   __X__ Taxes for the previous year, $1704.35 and assuming the same exemptions to be allowable for the current year; or
   _____ An estimate of current year's tax, *FILL IN CURRENT YEAR TAX AMOUNT*, based on the latest information with regard to current millage, assessed valuation and exemption allowed, estimate for the year **2022**.
   _____ No tax proration has been made.

3.    That it is understood by the Buyer(s) and Seller(s) with respect to tax proration, that the following shall apply: *(Choose one below)*

   _____ Both parties have accepted such proration as a final determination of liability for taxes between the parties; or:
   __X__ When current year's tax bills are available, the parties will make such further adjustments as might be necessary. This adjustment will be made directly between the parties and not through **BNT of Texas, LLC.**

BUYER(S)/BORROWER(S)                    SELLER(S)
Rolltide Realty, LLC

*/s/ Joshua Patterson*
/By Joshua Patterson                       _____
                                           William H Carrell

*/s/ Alan Nmi Villalobos*
/By Alan Nmi Villalobos

**BN**

BNT of Texas, LLC.

**BNT of Texas, LLC**
530 E. Southlake Blvd, Suite 140
Southlake, TX 76092
817-865-1707

File Number: GF22387SL

## LIMITED POWER OF ATTORNEY

| | |
|---|---|
| Closing Date: | May 23, 2022 |
| Loan Number: | 2205170000 |
| Address of Property: | 1028 E Bowie Street, Fort Worth, TX 76104 |
| Name of Borrower(s): | Rolltide Realty, LLC |
| Name of Lender: | Wildcat Lending Fund One, LP |
| Name of Agent: | BNT of Texas, LLC and BNT of Texas, LLC |

**POWERS:**

In the event a clerical or typographical error is discovered on any document pertaining to this transaction, my Agent, and/or its assignees, is hereby authorized to correct any clerical or typographical error and to initial, sign, seal and deliver as my act, any instrument which my Agent determines to be necessary to effectuate the correction. Specifically, my Agent may make a correction limited to the matters stated below on an original document, and is authorized to re-record that original document where appropriate. The undersigned declares that any and all corrections made by my Agent shall be as valid as if they had been initialed, signed, and delivered by me personally. The undersigned ratifies whatsoever my said Agent shall lawfully do or cause to be done in the correction of clerical and typographical errors as limited below.

**LIMITATION:**

My Agent is authorized to correct clerical and typographical errors as to the names of the Borrower(s) to this transaction, dates which look unclear, borrowers initials (if required), name of Lender, the legal description, county or street address of the real property which is the subject of this transaction and the Document Date on the documents.

My agent is not authorized to make any changes or corrections as to the interest rate stated on the security instrument or promissory Note; the amount of the principal indebtedness stated on the security instrument or promissory Note; or the amount of consideration stated on the security instrument.

This Power of Attorney is made of my own free will for the purpose of facilitating necessary corrections.

Date of Execution of this Limited Power of Attorney is: ___5-23-2022___

BUYER/BORROWER:
Rolltide Realty, LLC

_____
By Joshua Patterson

BUYER/BORROWER:

_____
By Alan Nmi Villalobos

STATE OF ___Texas___ )
COUNTY OF ___Tarrant___

The foregoing instrument was acknowledged before me on ___May 23___, 20 22, by ___Joshua Patterson___
___Alan Nmi Villalobos_____ who is/are ( ) personally known to me or (X) has produced
___D.L._____ as identification.

_____
NOTARY PUBLIC

Printed Name: ___Laurie Holmstrom___

My Commission Expires: ___MAR - 7 2026___

LAURIE HOLMSTROM
Notary Public, State of Texas
Comm. Expires 03-07-2026
Notary ID 131479489

*Limited Power of Attorney Page 1 of 1*



BNT of Texas, LLC.
**BNT of Texas, LLC**
530 E. Southlake Blvd, Suite 140
Southlake, TX 76092
817-865-1707

File Number: GF22387SL

# NOTICE TO BUYER

Please initial

### TERMITE INSPECTION:

I/We, the undersigned Borrowers, acknowledge that we have received a copy of the Termite Inspection Report regarding the subject property. I/We, am/are aware of and understand the findings, remarks, observations, recommendations, conditions and other health considerations as contained therein. I/We am/are satisfied with the condition of the Termite Inspection Report and are willing to accept the property in its "as is" condition. I/We further agree to hold **BNT of Texas, LLC** , Lender and/or its designated assignees harmless from any liability in the event of any future infestation

### COMPLIANCE:

The undersigned agrees, if requested by Closing Agent, to fully cooperate and adjust for clerical errors, any or all documentation deemed necessary or desirable in the reasonable discretion of Closing Agent.

### HOLD HARMLESS:

In the event that **BNT of Texas, LLC** engaged the services of outside agencies for the survey and/or termite or other inspections, it is hereby understood and agreed that such action was undertaken by **BNT of Texas, LLC** as a convenience to the parties of this transaction and to facilitate the closing. **BNT of Texas, LLC** has no affiliation with nor does it receive compensation from said agencies; therefore the undersigned hereby holds **BNT of Texas, LLC** harmless from any damages or claims which may result from said engagement of services.

### SURVEY:

I/We, the undersigned Purchasers/Owners, have examined the survey attached hereto, dated _____, prepared by **N/A**, being Job/Order Number **N/A**, and realize that the following encroachment and/or violations affect the captioned property as follows:

N/A

Notwithstanding the above, I/we desire to complete the closing of this transaction and disburse the proceeds, and we agree to hold **BNT of Texas, LLC** and **Agents National Title Insurance Company** free and harmless from any and all liability, loss, cost or expense that might incur by reason of the abovementioned encroachment and/or violations being insured by said underwriter.

Dated and accepted _____ May _____ , 23 , 20 22 in reference to the property located at **1028 E Bowie Street, Fort Worth, TX 76104**

**BUYER/BORROWER:**
**Rolltide Realty, LLC**

By Joshua Patterson

**BUYER/BORROWER:**

**By Alan Nmi Villalobos**

Notice to Buyer                                                                                                    GF22387SL

Escrow File No.: **GF22387SL**

## EXHIBIT "A"

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

**PARCEL NUMBER(S): 01820338**

Rev. 11/2021

| FACTS | WHAT DOES **BNT OF TEXAS, LLC** DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> • Contact information (e.g., name, address, phone number, email address) <br> • Demographic information (e.g., date of birth, gender, marital status) <br> • Identity information (e.g. Social Security Number, driver's license, passport, or other government ID number) <br> • Financial account information (e.g. loan or bank account information) <br> • Other personal information necessary to provide products or services to you <br><br> When you are no longer a customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons BNT of Texas, LLC chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does BNT of Texas, LLC share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** To offer our products and services to you | No | We don't share |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates everyday business purposes –** Information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For our nonaffiliates to market to you** | No | We don't share |

| Questions | Call toll free at (888-557-3017. |
|---|---|

**Page 2**

## Who we are

| | |
|---|---|
| Who is providing this notice? | BNT of Texas, LLC |

## What we do

| | |
|---|---|
| How does BNT of Texas, LLC protect my information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings |
| How does BNT of Texas, LLC collect my personal information? | We collect your personal information, for example, in the following ways: <br>• information we receive from you or your agent<br>• information gathered as part of processing your transactions with BNT of Texas, LLC, our affiliates, or others<br>• information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.<br><br>We also collect your personal information from other companies. |
| Why can't I limit all sharing? | Federal gives you the right to limit only<br>• Sharing for affiliates everyday business purposes – information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial or nonfinancial companies.<br>• Our affiliates include financial companies such as Companies with BNT, Ideal Title in the name, The Closer, Agents National Title Insurance Company, and Companies with Incenter in the Name. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• BNT of Texas, LLC does not share with nonaffiliates so they can market to you. |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• BNT of Texas, LLC doesn't jointly market. |

## Other Important Information

**For Vermont Residents:** We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures. Additional information concerning our privacy policies can be found at https://bostonnationaltitle.com/privacy-policy or call 1-(888) 557-3017.

### AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT NOTICE

| | |
|---|---|
| To: | Rolltide Realty, LLC |
| From: | BNT of Texas, LLC |
| File Number: | GF22387SL |
| Property: | 1028 E Bowie Street, Fort Worth, TX 76104 |
| Date: | May 23, 2022 |

This is to give you notice that BNT of Texas, LLC ("Boston National"), has a business relationship with Agents National Title Insurance Company ("Agents National"). Boston National and Agents National are each wholly owned, either directly or through one or more subsidiaries, by Incenter LLC. Because of this relationship, this referral may provide Boston National a financial or other benefit.

A. Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider as a condition for settlement of your loan on or purchase, sale, or refinance of the subject property. **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICES PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND AND DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| Provider | Settlement Service | Charge or Range of Charges |
|---|---|---|
| Agents National Title Insurance Company | Closing Protection Letter* | $0-$55 dependent on jurisdiction |
| Agents National Title Insurance Company | Loan Policy | Generally, $1.40 to $6.00 per $1,000 of liability dependent on transaction size and jurisdiction and subject to minimum premiums, endorsement fees, and discount rates applicable to certain transaction types and sizes |
| Agents National Title Insurance Company | Owner's Policy | Generally, $1.00 to $6.00 per $1,000 of liability dependent on transaction size and jurisdiction and subject to minimum premiums, endorsement fees, and discount rates applicable to certain transaction types and sizes |

*If available in your jurisdiction

ACKNOWLEDGMENT: I/we have read this disclosure form, understand that referring party is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

Rolltide Realty, LLC

_____        5/23/2022
By Joshua Patterson                              Date

_____
By Alan Nmi Villalobos

### AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT NOTICE

To:               Rolltide Realty, LLC
From:          BNT of Texas, LLC
File Number:    GF22387SL
Property:       1028 E Bowie Street, Fort Worth, TX 76104
Date:           May 23, 2022

This is to give you notice that BNT of Texas, LLC, has a business relationship with The Closer LLC. BNT of Texas, LLC and The Closer LLC are each wholly owned, either directly or through one or more subsidiaries, by Boston National Holdings LLC. Because of this relationship, this referral may provide BNT of Texas, LLC a financial or other benefit.

    A. Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider as a condition for settlement of your loan on or purchase, sale, or refinance of the subject property. **THERE ARE FREQUENTLY OTHER NOTARY COORDINATION SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND AND DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| Provider | Settlement Service | Charge or Range of Charges |
|---|---|---|
| The Closer LLC | Notary Coordination Services | $135.00 -$350.00 dependent on client and services provided |

ACKNOWLEDGMENT: I/we have read this disclosure form, understand that referring party is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

Rolltide Realty, LLC

_Joshua Patterson_              _5/23/2022_
By Joshua Patterson          Date



BNT of Texas, LLC.

# BNT of Texas, LLC

530 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 972-457-1650

# WIRING INSTRUCTIONS

## Receiving Bank Information:
ABA/Routing: **026009593**
Account Number: **488034636745**
Bank Name: **Bank of America TX6745**
901 Main Street
Dallas, TX 75202

## Beneficiary Information:
Account/Beneficiary Name: **BNT of Texas, LLC**
530 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 972-457-1650

*Please reference: File# GF22387SL/1028 E Bowie Street/Rolltide Realty, LLC/Loan#
2205170000*

### Good Funds notice for non-electronic funds:
**\*\*if over $1500.00, it _must_ be in the form of _certified funds_\*\***
**ACH Payments are not accepted and will be returned**

## WAIVER OF INSPECTION

May 23, 2022

BNT of Texas, LLC
530 E. Southlake Blvd, Suite 140
Southlake, TX  76092

      RE:    Owner's Title Policy of Insurance
               Your GF# **GF22387SL**

Gentlemen:

We agree that the Owner's Title Policy you are to issue covering

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

will be on the usual Texas form which contains the following printed exceptions:

1. Restrictive covenants affecting the land described or referred to above.

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments, or any overlapping of improvements.

3. Standby fees and taxes for the year **2022**, and subsequent years, and subsequent assessments for prior years due to change in land usage or ownership, and that the policy to be issued on this particular transaction will contain the following special exceptions:

4. Lien or liens created or assumed in conjunction with this transaction, if any.

5. Rights of parties in possession.

Since **BNT of Texas, LLC** examines only the record title and does not actually see the property, we hereby waive inspection by **BNT of Texas, LLC** of this property and accept our policy subject to the rights of parties in possession. We agree that it is our responsibility to inspect said premises and to obtain possession of it from the present occupants, if any.

We acknowledge we are not relying upon any representation, statement or other assertion about the property condition or parties in possession, but are relying upon our inspection of the property. We take the property under the express understanding that the title insurance agent and title insurance company have made no express or implied warranties. We understand the title insurance agent and title insurance company have determined the insurability of title solely for their own benefit.

Very truly yours,
**Rolltide Realty, LLC**

**By Joshua Patterson**

**By Alan Nmi Villalobos**



# GRAY REED.

MICHAEL E. GILLMAN
DIRECT NO. 469.320.6048
MGILLMAN@GRAYREED.COM

May 23, 2022

Boston National Title
530 E Southlake Blvd., Suite 140
Southlake, TX 76092

ATT:  Emily Street – estreet@bostonnationaltitle.com

> Re:    $139,500.00 loan ("Loan") from Wildcat Lending Fund One, LP ("Lender") to
> Rolltide Realty, LLC ("Borrower"); Your GF No. F22387SL

Dear Emily:

This law firm represents Lender in connection with the closing of the Loan.  This letter
contains instructions to you on behalf of Lender with respect to the closing of the Loan.

**NOTE:   PLEASE   E-MAIL   RECORDED   DOCUMENTS   TO
LOANS@WILDCATLENDING.COM WITHIN ONE WEEK OF CLOSING.**

1.     **Enclosures**

Enclosed with this letter are the following described documents for use in closing the Loan:

(a)  Real Estate Lien Note (the "Note");

(b)  Deed of Trust (the "Deed of Trust") (Record);

(c)  Loan Agreement Rider;

(d)  Assignment of Rents and Leases (Record);

(e)  Notice to Receive Appraisal;

(f)  W-9 – Rolltide Realty, LLC;

(g)  Authorization for Automatic Payment Deduction (Bank information to be completed);

(h)  Notice of Penalties;

1028 E. Bowie St., Ft. Worth, TX 76104
4892-6623-5169.1

Boston National Title
May 23, 2022
Page 2

     (i)  Errors and Omissions;

     (j)  USA Patriot Act;

     (k)  Collateral Protection Notice;

     (l)  Nonhomestead and Business Purpose Affidavit;

     (m)Guaranty – Joshua L. Patterson;

     (n)  Guaranty – Alan Villalobos;

     (o)  Resolutions of Rolltide Realty, LLC;

     (p)  W-9 – Joshua L. Patterson; and

     (q)  W-9 – Alan Villalobos.

Please be certain that all blanks in the enclosed documents are completed prior to the execution of these documents and are executed and acknowledged, as applicable. No changes shall be made to the enclosed documents without the express permission of Lender. These documents are to be held in trust by you. **PLEASE HAVE BORROWER EXECUTE ONE ORIGINAL OF ALL OF THE ENCLOSED DOCUMENTS.**

2. **Other Documents**

Prior to closing, Borrower should have delivered to you the following described documents:

     (i)     Borrower's Company Agreement (if applicable)
     (ii)    Lender to approve Settlement Statement (if applicable)
     (iii)   Deed to retain a vendor's lien assigned to lender (if applicable)

Please contact me to confirm that you have received such documents, which must be approved by the undersigned.

3. **Title Policy**

Before you disburse any funds received by you from Lender or otherwise advise Lender that this transaction has closed, you must be in a position to issue, and willing to issue, to Lender, a Form T-2 Loan Policy of Title Insurance (the "Policy") in accordance with the Pro Forma Loan Policy previously delivered, a copy of which is attached hereto and the Commitment (the "Commitment") you issued under the above-referenced GF number in accordance with the following:

    A.  **Schedule A**

     (i)     The amount of Insurance shall be in an amount not less than the principal face amount of the Note;

4892-6623-5169.1

Boston National Title
May 23, 2022
Page 3

(ii)    The Effective Date of the policy must be the date the Deed of Trust is filed of record (which shall be the same day as initial funding of the Loan unless otherwise authorized by Lender);

(iii)    The Insured under the Policy shall read exactly as Lender's name is set forth in the Note;

(iv)    Title to the real property described in the Deed of Trust must be fee simple title and must be shown by the Policy to be vested in Borrower, and any easements benefiting said real property must be included in the description of the property insured by the Policy;

(v)    The real property described in the Policy must be the same property described in the Deed of Trust and in the Survey;

(vi)    The lien insured by the Policy must be the first priority lien arising under the Deed of Trust; and

(vii)    Prior to conveyance of Property to Borrower, record title to be held by Seller as set forth in the Contract (if applicable).

**B.**    **Schedule B**

(i)    The tax deletion must be made:  Item 5 of Schedule B must be modified in the Policy to delete the words "and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership," and must except only to "Standby fees, taxes and assessments by any taxing authority for the current year and subsequent years, not yet due and payable."

**C.**    **Endorsements/Other**

(i)    If available, you must issue a T-19 endorsement;

(ii)    If the Policy includes an exclusion or exception regarding minerals as provided in Procedural Rule P-5.1, and the T-19 endorsement is not available, you must issue a T-19.2 or T-19.3 endorsement, as applicable;

(iii)    The following endorsements to the Loan Policy must be issued: T-3 Endorsement, T-27 Assignment of Rents/Leases Endorsement and T-30 Tax Endorsement;

(iv)    An Insured Closing Letter to the Lender must be issued;

(v)    The arbitration clause must be deleted;

(vi)    All matters described on Schedule C of the Commitment must be disposed of to your complete satisfaction so that none of these matters will appear as exceptions in the Policy; and

4892-6623-5169.1

Boston National Title
May 23, 2022
Page 4

(vii)    The Policy must be written by the same underwriter which issued the Commitment.

**4.    Items to be Delivered to Lender Before Funding or Recording**

Before you request any funds from Lender, request authorization to record documents or otherwise advise that this transaction has closed, please deliver to Lender for Lender's review and approval by email of scanned documents to be followed post closing by delivery to Lender of the following:

(a)    The original Closing Statement;

(b)    The original Note;

(c)    Certified copies of documents to be recorded in connection with this Loan, whether forwarded to you by Lender or others; and

(d)    Copy of this letter signed by you.

Closing package should be delivered to Bryan Kaminski, 4800 Dexter Drive, Plano, Texas 75093.

**5.    Fees to be Collected**

You must collect from Borrower and deliver to Lender (at the address shown above) at closing by check drawn on your account or wire transfer per Lender's instructions, all fees and reimbursements required by Lender in separate correspondence.

Your recorder's receipt for deed of trust and/or other recorded documents and any other outstanding item not furnished prior to disbursement of loan proceeds must be delivered to Lender within three (3) business days from date of your disbursement of loan proceeds. The Policy is to be delivered to Lender within thirty (30) days from date of your disbursement of loan proceeds.

**PLEASE NOTE DIFFERENT PAYEES – WILDCAT LENDING FUND ONE, LP AND WILDCAT LENDING LLC, AS APPLICABLE**

Fees include the following:

**A.        Wildcat Lending Fund One, LP (net funded)**
(i)      Origination fee - $2,790.00 payable to Wildcat Lending Fund One, LP;
(ii)     Collect interest per diem from date of closing to first day of next month - $42.59 per day;
(iii)    Credit report fee  - $30.00 payable to Wildcat Lending Fund One, LP;
(iv)     Flood certificate fee - $15.00 payable to Wildcat Lending Fund One, LP;

**B.        Wildcat Lending, LLC**
(i)      Processing fee - $950.00 payable to Wildcat Lending, LLC;
(ii)     Internal Document Review fee - $150.00 payable to Wildcat Lending, LLC;

4892-6623-5169.1

Boston National Title
May 23, 2022
Page 5

    **C.**     **Gray Reed & McGraw LLP**
       (i)    Lender's attorneys' fees to Gray Reed & McGraw LLP - $300.00;

    **D.**     **Other**
       (i)    Appraisal fee - $400.00 payable to John Kirchen; and
       (ii)   Homeowners Insurance premium $834.00 payable to WCL Insurance Services
           LLC.

**6.**    **Recording/Filing/Erecording**

    To the extent available in the applicable county, all documents to be recorded shall be erecorded, with evidence thereof to be sent immediately to Lender upon Title Company's receipt thereof. Please be certain the Deed of Trust is immediately recorded in the Real Property Records of the applicable county in Texas. **PLEASE E-MAIL RECORDED DOCUMENTS TO LOANS@WILDCATLENDING.COM WITHIN ONE WEEK OF CLOSING.**

**7.**    **Disbursement**

    You are not to disburse loan funds (i) unless all matters disclosed on Schedule C of the Commitment will be paid or disposed of to the satisfaction of to the title insurer prior to the date of the issuance of the Policy, and no exceptions for any item on said Schedule C shall be contained in the Policy and (ii) you have recorded and filed all documents required to be recorded or filed.

    If for any reason you cannot comply strictly with these instructions, then do not request any funds from Lender (or do not disburse any funds you have received) in connection with this transaction or otherwise advise Lender that this transaction has closed. If you are prepared to comply with all such instructions, you are hereby authorized to disburse the proceeds of the Loan, deducting first any amounts payable to you by Borrower as shown on the Closing Statement. Neither Lender nor this firm shall be responsible to you for the payment of any costs, fees or expenses incurred by you or on your behalf in connection with this closing. If you are not prepared to disburse loan proceeds within five (5) days of the date hereof, then upon written demand of Lender or the undersigned, and without notice to any other party, you are directed to return all documents to me and promptly remit loan proceeds to Lender in immediately available funds.

    We have also enclosed our statement for services on behalf of Lender, which we would appreciate your collecting as part of the closing. If you have any questions regarding any aspect of this transaction, please call us at your convenience.

                     Sincerely,

                     Gray Reed & McGraw LLP

                     By:    */s/ Michael E. Gillman*
                         Michael E. Gillman

4892-6623-5169.1

# REAL ESTATE LIEN NOTE

**$139,500.00**                    **Southlake, Texas**                    **May 23, 2022**

**FOR VALUE RECEIVED**, the undersigned, **Rolltide Realty, LLC, a Texas limited liability company** (the "Borrower"), does promise to pay to the order of **WILDCAT LENDING FUND ONE, LP, a Texas limited partnership** (together with all subsequent holders hereof, the "Noteholder"), at 4800 Dexter Dr., Plano, Texas 75093, or elsewhere as the holder of this Note may direct in writing, the sum of **$139,500.00** in legal and lawful money of the United States of America, together with interest on the unpaid principal balance from day to day remaining, based on a 360-day year, at the rate of **Ten and 99/100 Percent (10.99%)** per annum, simple interest.

Accrued but unpaid interest shall be due and payable monthly, commencing **July 1, 2022** and continuing on the first day of each successive month thereafter through the maturity date hereof. This Note, including all unpaid principal and all accrued and unpaid interest hereunder, shall be due and payable on or before **November 23, 2022** (the "Original Maturity Date"). The Original Maturity Date shall automatically renew for one (1) additional ninety (90) day period (the "Extended Maturity Date") on the Original Maturity Date, without any further action by Borrower or Noteholder, provided (i) there is no existing event of default, or any event which, with the passage of time or notice would constitute an event of hereunder, and (ii) Borrower complies with all covenants of the Note, Deed of Trust, and all other documents executed in connection therewith, including, but not limited to, providing to Noteholder, prior to the Original Maturity Date, updated insurance certificates evidencing required insurance paid through the Extended Maturity Date. If the Original Maturity Date shall be extended to the Extended Maturity Date, then Borrower agrees to pay to Noteholder, in addition to all other amounts due hereunder, a monthly extension fee (the "Extension Fee") equal to 0.5% per month of the outstanding plus available principal amount of this Note, as of the day of the month of the making of this Note for each calendar month from the Original Maturity Date, until the earlier of (i) the full payment of this Note, or (ii) the Extended Maturity Date (which Extension Fee shall be deemed earned on a monthly basis and not prorated for any partial month). The Extension Fee shall be due and payable upon the earlier of (i) the full payment of this Note, or (ii) the Extended Maturity Date. If Borrower does not desire to extend the Original Maturity Date to the Extended Maturity Date, then Borrower shall deliver to Noteholder written notice of Borrower's intent not to extend the Original Maturity Date at least five (5) days prior to the Original Maturity Date. Any past due amounts hereunder shall bear interest until paid at the maximum rate permitted by law. Borrower shall execute and deliver to Noteholder an authorization for automatic payment deduction from an account of Borrower (the "Account") at a financial institution reasonably acceptable to Noteholder whereby Noteholder may automatically charge the Account monthly for payments due hereunder (the "ACH Payment"). Failure of Borrower to keep the ACH Payment in place during the term of this Note, or failure of adequate funds to be immediately available to Noteholder in the Account on the first day of each month as due, shall be an event of default hereunder. Without limiting any rights or remedies of Noteholder hereunder, if Noteholder shall be advised from such Account bank that there are inadequate funds available for such ACH Payment on the date payment is due, Noteholder may assess Borrower an administrative fee of **$200.00** per occurrence for Noteholder's resubmittal for such ACH Payment and administration in connection therewith.

Any provision herein, in the Deed of Trust (as herein defined), or in any other document executed in connection herewith, or any other agreement, whether written or oral, express or implied, to the contrary notwithstanding, neither Noteholder, nor any holder hereof, shall in any event be entitled to contract for, receive or collect, nor shall any amounts received hereunder be credited, so that the Noteholder or any holder hereof shall be paid, as interest, a sum greater than the maximum amount or

1028 E. Bowie St., Ft. Worth, TX 76104
**REAL ESTATE LIEN NOTE - TX**                                        **Page 1**
4875-3837-8529.1

maximum rate permitted by applicable law to be charged to the person or entity, primarily obligated to pay this Note at the time in question. If any construction of this Note, the Deed of Trust, or any and all other papers or agreements executed in connection with the loan contemplated hereunder, indicate a different right given to Noteholder or any holder hereof to contract for, demand or receive any larger sum as interest, such is a mistake in calculation or wording, which this clause shall override and control, it being the intention of the parties that this Note, the Deed of Trust, and all other instruments securing the payment of this Note, and all other documents executed in connection herewith, shall in all things comply with applicable law, and proper adjustments shall automatically be made accordingly. In the event that Noteholder, or any holder hereof, ever contracts for, receives, collects or applies to interest any sum in excess of the maximum rate, if any, such excess amount shall be applied to the reduction of the unpaid principal balance of this Note, and if this Note is paid in full, any remaining excess shall be paid to Borrower. In determining whether or not the interest paid or payable, under any specific contingency, exceeds the highest lawful rate, if any, Borrower and Noteholder, or any holder hereof shall, to the maximum extent permitted under applicable law, (a) characterize any non-principal payment as an expense or fee rather than as interest, (b) exclude voluntary prepayments and the effects thereof, and (c) "spread" the total amount of interest throughout the entire term of this Note; provided, that if this Note is paid and performed in full prior to the end of the full contemplated term hereof, and if the interest received for the actual period of existence thereof exceeds the maximum rate, if any, Noteholder, or any holder hereof, shall refund to Borrower the amount of such excess or credit the amount of such excess against the aggregate unpaid principal balance of all advances made by the Noteholder, or any holder hereof, under this Note at the time in question. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between the Borrower and Noteholder. The terms "maximum amount" or "maximum rate" as used herein include, as to Chapter 303 of the Texas Finance Code, as amended (and as same may be incorporated by reference in other statutes of the State of Texas), but otherwise without limitation, that rate based upon the rate ceiling applicable to the "weekly ceiling".

It is expressly provided that upon default in the punctual payment of this Note, or any part hereof, as the same shall become due and payable, or upon the failure of performance of any of the other agreements or covenants contained in the Deed of Trust, or the failure to perform any other covenants or agreements contained in any other document securing this Note or executed in connection with, or relating to, this Note, or upon a default by Borrower under any other indebtedness of Borrower to Noteholder, Noteholder may declare the entire unpaid balance of principal and accrued interest on this Note immediately due and payable, and without waiver of any other rights or remedies, foreclose all liens and security interests securing payment thereof, or any part thereof. In the event default is made in the prompt payment of this Note when due or declared due, and the same is placed in the hands of an attorney for collection, or suit is brought on same or the same is collected through probate, bankruptcy or other judicial proceedings, then the Borrower agrees and promises to pay all court costs and reasonable costs of collection hereof when incurred, including reasonable attorneys' fees, whether or not legal action shall be instituted to enforce this Note.

Borrower, and all other parties now or hereafter liable for the payment hereof, whether as endorser, guarantor, surety or otherwise, severally waive demand, presentment, notice of dishonor, diligence in collecting, grace, notice of non-payment (except as otherwise herein provided) and protest, notice of protest, notice of intent to accelerate and notice of acceleration, and consent to all extensions which from time to time may be granted by the holder hereof and to all partial payments hereon, whether before or after maturity, and agree that its liability and the liability of its successors, assigns and legal representatives for the payment hereof shall not be affected or impaired by any release or change in the security or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment. It is specifically agreed by the undersigned that the holder hereof shall have the right at all times to decline to make any such release or change in the security for any such increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

1028 E. Bowie St., Ft. Worth, TX 76104
**REAL ESTATE LIEN NOTE - TX**                                                                                    Page 2
4875-3837-8529.1

Borrower may prepay this Note, in whole or in part, without penalty, and interest shall immediately cease upon any principal so prepaid; provided, however, that no partial prepayment of principal shall postpone, delay, or affect the obligation of Borrower to continue to pay the payments herein provided on their regularly scheduled due dates following any such partial prepayment of principal, until the whole of the principal sum hereof, with all interest thereon, has been fully paid. All partial prepayments shall be applied first to accrued interest and the balance to the remaining principal installments in inverse order of their maturity.

Payment of this Note is secured by:

1.   A Deed of Trust (the "Deed of Trust"), of even date herewith, executed and delivered by Borrower to Michael E. Gillman, Trustee, and covering certain real property, together with certain improvements, fixtures, and personal property, situated in **Tarrant** County, Texas (the "Property"), to which Deed of Trust reference is hereby made for a description of the Property, the nature and extent of the security and the rights of the Trustee therein and the holder hereof in respect of such security; and

2.   Other collateral and documents executed by Borrower in connection with the indebtedness evidenced by this Note.

No delay on the part of the holder of this Note in the exercise of any power or right under this Note, under the Deed of Trust, or under any other instrument executed pursuant hereto, shall operate as a waiver thereof, nor shall a single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. Enforcement by the holder of this Note of any security for the payment hereof shall not constitute any election by it of remedies so as to preclude the exercise of any other remedy available to it.

This Note shall be governed by and construed in accordance with the laws of the State of Texas. This Note is performable in Collin County, Texas. Any action or proceeding under or in connection with this Note against Borrower or any other party ever liable for payment of any sums of money payable on this Note may be brought in any state or federal court in Collin County, Texas. Borrower and each such other party hereby irrevocably (i) submits to the nonexclusive jurisdiction of such courts, and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum.

In the event there is more than one (1) maker of this Note, the obligations of such makers shall be joint and several hereunder.

**BORROWER:**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson_, Member
    **Joshua L. Patterson**
Its:   **Member**

1028 E. Bowie St., Ft. Worth, TX 76104
**REAL ESTATE LIEN NOTE - TX**
4875-3837-8529.1

Page 3

AFTER RECORDING PLEASE RETURN TO:
WILDCAT LENDING FUND ONE, LP
4800 Dexter Dr.
Plano, Texas 75093

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| COUNTY OF TARRANT | § | |

THAT **Rolltide Realty, LLC, a Texas limited liability company**, whose mailing address is **1910 Crestridge Dr., Arlington, TX 76013**, being the Debtor(s) and hereinafter called "Grantors" (whether one or more), in consideration of TEN AND NO/100 DOLLARS ($10.00), in hand paid, and the debt and trust hereinafter mentioned, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto Michael E. Gillman, Trustee, hereinafter called the "Trustee" (whether one or more), and to his successors in trust, the following described land and other property situated in the County of Tarrant, State of Texas, to-wit:

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

together with all heating, plumbing, refrigeration, lighting fixtures, equipment and/or appliances now or hereafter attached thereto or used in connection therewith, and all buildings and improvements thereon and hereafter placed thereon; appurtenances, servitudes, rights, ways, privileges, and advantages thereunto belonging or in anywise appertaining, hereinafter called the "Mortgaged Premises".

**TO HAVE AND TO HOLD** the Mortgaged Premises unto the Trustee forever, Grantors hereby bind themselves to warrant and forever defend the title to the Mortgaged Premises, or any part thereof, unto the Trustee against all persons whomsoever claiming or to claim the same or any part thereof.

1.      This conveyance is made in trust, however, to secure payment of a debt in the principal sum of **$139,500.00**, evidenced by a Promissory Note of even date herewith, hereinafter called the "Note", the terms of which are incorporated herein by reference, executed by Grantors, payable to the order of WILDCAT LENDING FUND ONE, LP, being the Secured Party(ies), and hereinafter called the "Noteholder" (whether one or more) at 4800 Dexter Dr., Plano, Texas 75093, which is the Noteholder's address, or at such other place as the Noteholder may from time to time designate in writing, with interest and in installments as stipulated and provided therein and finally maturing on **November 23, 2022**.

2.      This Conveyance is made in trust to further secure payment of all other amounts with interest thereon becoming due and payable to the Noteholder under the terms of the Note or this Deed of Trust, including (but not limited to) any extension, renewal or re-amortization of said Debt, any increase or addition thereto and any current or future debt owing by Grantors to the Noteholder, of any kind or character, whether evidenced by note,

1028 E. Bowie St., Ft. Worth, TX 76104
**DEED OF TRUST - TX**                                                                                          Page 1
4860-6185-2449.1

guaranty, open account or otherwise, the payment thereof being secured or intended to be secured hereby; and to further secure performance and discharge of each and every  promise, obligation, covenant and agreement of Grantors contained in the Note, this Deed of Trust or any other instrument executed by Grantors, pertaining to said debt or the security thereof, and any and all other costs and expenses incurred by Noteholder in connection with the loan evidenced by the Note, all at which shall be indebtedness due by Grantors to Noteholder hereunder and under the Note.

3.    As additional security for the payment of said debt, Grantors hereby transfer and assign unto the Noteholder:

a.    All judgments, awards of damages and settlements hereinafter made resulting from condemnation proceedings or the taking of all or any part of the Mortgaged Premises under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Premises or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets. The Noteholder is hereby authorized, but shall not be required, on behalf and in the name of Grantors, to execute and deliver acquittances for, and to appeal from, any such judgments or awards. The Noteholder may apply all such sums or any part thereof so received, after the payment of all expenses, including costs and attorney's fees, on the debt in such manner as the Noteholder elects;

b.    All bonuses, rents and royalties accrued or to accrue under all oil, gas or mineral leases, now existing or which may hereafter come into existence. Grantors direct payment of the same to the Noteholder, at the option of the Noteholder and upon written demand of the Noteholder therefor, to be applied to the debt until paid, whether due or not, and either before or after any default under the terms of this Deed of Trust or the Note.

c.    All rents, issues and profits of the Mortgaged Premises, including, but not limited to, all unsevered crops, or Grantors' interest therein. Grantors direct payment of the same to the Noteholder to be applied to the debt until paid, whether due or not. This assignment shall become operative upon any default of Grantors under the terms of this Deed of Trust or the Note and shall remain in full force and effect so long as any default continues in the matter of making any of the payments or the performance of any of the covenants set forth in this Deed of Trust or the Note.

d.    All contract rights in and to the Mortgaged Premises, including, but not limited to, contracts for the sale of the Mortgaged Premises, and contracts relating to construction thereon.

4.    The proceeds of the Note to the extent that the same are utilized to take up any outstanding liens against the Mortgaged Premises, or any portion thereof, have been advanced by the Noteholder at Grantors' request and upon Grantors' representation that such amounts are due and are secured by valid liens against the Mortgaged Premises. The Noteholder shall be subrogated to any and all rights, superior titles, liens, and equities owned or claimed by any owner or holder of any outstanding liens and debts, however remote, regardless of whether said liens or debts are acquired by the Noteholder by assignment or are released by the holder thereof upon payment.

5.    Grantors further covenant and agree:

a.    That Grantors will pay the principal of and interest on the Note in accordance with the terms thereof. That Grantors are seized of the Mortgaged Premises and are entitled to convey the same; that Grantors will make such further assurance of title as may be necessary to fully confirm to the Trustee the title to the Mortgaged Premises.

b.    That all awnings, door and window screens, storm window screens, storm windows and doors, mantels, cabinets, rugs, carpeting, linoleum, wall and in-a-door beds, stoves, shades, blinds, oil and other fuel-burning systems and equipment, water heaters, radiator covers, and all plumbing, heating, lighting, cooking, ventilating, cooling, air-conditioning and refrigerating apparatus and equipment, and such goods and chattels and personal property as are ever furnished by landlords in letting or operating an unfurnished building, or which are or shall be attached to said building by nails, screws, bolts, pipe connections, masonry or in other manner, and all additions thereto and replacements thereof, and such built-in equipment as shown by plans and specifications, are and shall be deemed to be fixtures and accessions to the Mortgaged Premises being hereby agreed to be immovables

**DEED OF TRUST**                                                                                                    **Page 2**
4860-6185-2449.1

and a part of the realty as between the parties hereto, and shall be deemed to be a part and portion of the Mortgaged Premises.

c. That Grantors will pay (prior to delinquency) all taxes and assessments levied or assessed upon the Mortgaged Premises, or the interest created therein by this Deed of Trust, and exhibit the receipts therefor to the Noteholder (unless such payments are made by the Noteholder, as hereinafter provided), and will defend the title and possession of the Mortgaged Premises to the end that this Deed of Trust shall be and remain a first lien on the Mortgaged Premises until the debt is paid. That Grantors will pay all attorneys' fees and expenses which may be incurred by the Noteholder in enforcing the terms of the Note and this Deed of Trust or in any suit which the Noteholder may become a party where this Deed of Trust or the Mortgaged Premises is in any manner involved, and all expenses incurred in presenting a claim against the estate of a decedent or a bankrupt. The word "assessments" as used in this Deed of Trust, whether in this paragraph or elsewhere, shall include not only assessments by political subdivisions, but also maintenance charges, regular assessments and special assessments assessed by subdivision restrictions, homeowner's declarations for planned unit developments and assessments by condominium agreements, if any.

d. That Grantors will keep all insurable Mortgaged Premises insured for the protection of the Noteholder against loss by fire, hazards included within the term "extended coverage" and such other hazards as Noteholder may require in such manner, in such amounts, and in such companies as the Noteholder may approve, and keep the policies therefor, properly endorsed, on deposit with the Noteholder. If renewal policies are not delivered to the Noteholder 30 days before the expiration of the existing policy or policies, with evidence of premiums paid, the Noteholder may, but is not obligated to, obtain the required insurance on behalf of Grantors (or insurance in favor of the Noteholder alone) and pay the premiums thereon and Grantors shall be liable to Noteholder for (i) the cost of all such premiums paid for Noteholder, plus (ii) an administrative fee each such instance for Noteholder's placing of such insurance equal to (i) $200.00 for the first month, and (ii) $100.00 for each successive month thereafter. Grantors assign to Noteholder all right and interest in all such policies of insurance and authorize the Noteholder to collect for, adjust or compromise any losses under any insurance policy on the Mortgaged Premises, and loss proceeds (less expense of collection) shall, at the Noteholder's option, be applied on the debt, whether due or not, or to the restoration of the Mortgaged Premises, or be released to Grantors, but such application or release shall not cure or waive any default.

e. That, when requested by the Noteholder, Grantors will pay with and in addition to the monthly payments of principal and interest payable under the terms of the Note, on the same day as the principal and interest installments are due and payable, a sum equal to one-twelfth of the estimated annual ground rents, taxes, hazard insurance premiums, and assessments, if any, next due on the Mortgaged Premises. If the amount so paid is not sufficient to pay such ground rents, taxes, hazard insurance premiums and assessments when due, then Grantors will deposit immediately with the Noteholder an amount sufficient to pay such ground rents, taxes, hazard insurance premiums and assessments. If there is a default under any of the provisions of this Deed of Trust resulting in a sale of the Mortgaged Premises or foreclosure, or if the Noteholder acquires the Mortgaged Premises otherwise after default, the Noteholder shall apply, at the time of commencement of such proceedings or at the time the property is otherwise acquired, the balance then remaining of the funds accumulated under this provision as a credit against the amount then remaining unpaid under the Note. No interest shall accrue or be allowed on any payments made under the provisions of this paragraph. If the amount so paid is in excess of the amount needed to pay such ground rents, taxes, hazard insurance premiums, and assessments in any calendar year, such excess shall be applied to the next maturing installments of principal and interest. All deposits made pursuant to this paragraph shall be held by the Noteholder as additional security for the payment of the debt described herein and shall not be assigned, attached or otherwise alienated except when transferred by Grantors to a new owner of the Mortgaged Premises concurrently with a bona fide sale of the Mortgaged Premises.

f. That Grantors will not commit or permit any waste on the Mortgaged Premises and will keep the buildings, fences and all other improvements now or hereafter erected on the Mortgaged Premises in sound condition and in good repair and will neither do nor permit to be done anything to the Mortgaged Premises that may impair the value thereof and the Noteholder shall have the right of entry upon the Mortgaged Premises at all reasonable times for the purpose of inspecting the same.

**DEED OF TRUST**
4860-6185-2449.1

Page 3

6.    The Noteholder, without notice, may take possession of the Mortgaged Premises upon default of Grantors, under the terms of this Deed of Trust or the Note, rent the same for the account of Grantors, deduct from the rents all expenses and apply the remainder to the debt.

7.    In the event the ownership of the Mortgaged Premises, or any part thereof, becomes vested in a person other than Grantors, the Noteholder may, without notice to Grantors, deal with such successor or successors in interest with reference to this Deed of Trust and to said debt in the same manner as with Grantors without in any way vitiating or discharging Grantors' liability hereunder or upon the debt. No sale of the Mortgaged Premises and no forbearance on the part of the Noteholder and no extension of the time for the payment of the debt hereby secured, given by the Noteholder, shall operate to release, modify, change, or affect the original liability of Grantors, either in whole or in part.

8.    The Noteholder, without notice, may release any part of the Mortgaged Premises, or any person liable for the debt, without in any way affecting the lien hereof upon any part of the Mortgaged Premises not expressly released or the liability of any person not expressly released, and may agree with any party obligated on the debt, or having any interest in the Mortgaged Premises, to extend the time for payment of any part or all of the debt. Such agreement shall not in any way release or impair the lien hereof, but shall extend the lien hereof as against the title of all parties having any interest in the Mortgaged Premises which interest is subject to this Deed of Trust.

9.    Grantors waive the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Mortgaged Premises, commonly known as Appraisement Laws, and (ii) the benefit of all laws that may be hereafter enacted in any way extending the time for the enforcement of the collection of said debt or creating or extending a period of redemption from any sale made in collecting said debt, commonly known as Stay Laws and Redemption Laws, and Grantors hereby agree and contract that the laws of the State of Texas, save as above excepted, now in force relative to the collection of said debt and the application to the payment thereof, are expressly adopted and made a part hereof.

10.    The Noteholder may, at the Noteholder's option, without demand or notice and without waiver of any right, pay or discharge any lien or claim upon the Mortgaged Premises or pay any delinquent tax or assessment and upon such payment the Noteholder shall be subrogated respectively to the rights of the holder of such lien or claim or to the rights of the taxing authority; the Noteholder may advance any unpaid insurance premiums, and whenever Grantors have failed properly to maintain the improvements, the Noteholder may make repairs necessary for the proper preservation of the security. Grantors agree to pay to the Noteholder, upon demand, any and all disbursements made under the provisions of this Deed of Trust together with interest thereon at the rate which the principal of the Note shall bear after default from the respective dates of such disbursements, and all such disbursements shall become a part of the debt, payable at the same place specified in the Note, and shall be secured by this Deed of Trust.

11.    Acceptance by the Noteholder of any payment in an amount less than the amount then due on said debt shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be a default. At any time thereafter, and until the entire amount then due on said debt has been paid, the Noteholder shall be entitled to exercise all rights conferred upon it in this instrument upon the occurrence of a default.

12.    If Grantors make an assignment for the benefit of creditors, or if a receiver is appointed for any part of the Mortgaged Premises, or if Grantors are adjudicated a bankrupt, or if Grantors institute any proceeding under the Federal Bankruptcy Laws of the United States, or similar Laws of any State in which Grantors are domiciled, then on the happening of any one of these events, the whole of said debt shall immediately become due and payable at the option of the Noteholder, and the Noteholder may proceed with foreclosure as herein provided.

13.    If Grantors shall well and truly pay, or cause to be paid, the Note, and other debt that may be owing, and do keep and perform each and every covenant, condition, and stipulation herein and in the Note contained, then these presents shall become null and void; otherwise to be and remain in full force and effect. If there is a default in any payment, or part thereof, under the Note, or any other current or future indebtedness of Grantors to Noteholder of any kind or nature, or if Grantors shall fail to keep or perform any of the covenants,

**DEED OF TRUST**                                                                                            Page 4
4860-6185-2449.1

conditions or stipulations herein, or in the Note, then the Note, together with all other sums secured hereby shall, at the option of the Noteholder, become at once due and payable without demand or notice other than that demand or notice provided for in this paragraph, and the Trustee when requested so to do by the Noteholder after such default, shall sell the Mortgaged Premises at public auction to the highest bidder for cash, between the hours of ten o'clock A.M. and four o'clock P.M., at the time specified on the notice, on the first Tuesday in any month or such other date in accordance with Chapter 51 of the Texas Property Code, at the designated area of the County Courthouse, as designated by the commissioners' court in the County in which the Mortgaged Premises, or any part thereof, are situated, after advertising the time, place and terms of said sale and the Mortgaged Premises to be sold by posting, or causing to be posted, at least twenty-one (21) consecutive days prior to the date of said sale, written or printed notice thereof at the Courthouse door in each of the Counties in which the Mortgaged Premises are situated (such notice shall designate the County where the Mortgaged Premises will be sold), or otherwise in accordance with Chapter 51 of the Texas Property Code. In addition, at least twenty-one (21) days preceding the date of the sale written notice of the proposed sale shall be served by Certified Mail on each debtor obligated to pay such debt, according to the records of Noteholder. Service of such notice shall be completed upon deposit of the notice enclosed in a prepaid wrapper, properly addressed to such debtor at the most recent address as shown by the records of the Noteholder, in a Post Office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. Grantors authorize and empower the Trustee to sell the Mortgaged Premises, together, or in lots or parcels, as the Trustee shall deem expedient, to execute and deliver to the purchaser or purchasers thereof good and sufficient deeds of conveyance thereto by fee simple title, with covenants of general warranty, (and the title of such purchaser, or purchasers, when so made by the Trustee, Grantors bind themselves to warrant and forever defend) and to receive the proceeds of said sale which shall be applied as follows, in the following order: (i) to all reasonable costs and expenses of the sale, including, but not limited to reasonable trustee's fees and attorney's fees and costs of title evidence; (ii) to all sums secured by this Deed of Trust; and (iii) the excess, if any, to Grantors or such other person or persons entitled thereto by law.

14.    The Noteholder shall have the additional right, upon the commencement of any action to enforce the lien herein given, to have appointed by the court, in which said action is instituted, a receiver to take possession of the premises and collect the said rents, issue, and profits arising from the Mortgaged Premises. This provision is a right created by this contract and is cumulative of, and is not to affect in any way, the right of the Noteholder to the appointment of a receiver given the Noteholder by law.

15.    If default be made in the payment of any installment of the Note, or any part thereof, or if for any reason (other than the fault of the Noteholder) Grantors fail to keep or perform any of the covenants, conditions or stipulations herein, the Noteholder shall have the option to proceed with foreclosure in satisfaction of such items, either through the courts or by directing the Trustee to proceed as if under a foreclosure, conducting the sale as herein provided and without declaring the whole debt due, and provided that if said sale is made because of such default, such sale may be made subject to the unmatured part of the Note and debt secured by this Deed of Trust, and such sale, if so made, shall not in any manner affect the unmatured part of the debt secured by this Deed of Trust, but, as to such unmatured part this Deed of Trust shall remain in full force as though no sale had been made under the provisions of this paragraph. Several sales may be made without exhausting the right of sale for any unmatured part of said debt, it being the purpose to provide for a foreclosure and sale of the Mortgaged Premises for any matured portion of said debt without exhausting the power of foreclosure and to sell the Mortgaged Premises for any other part of said debt whether matured at the time or subsequently maturing.

16.    In case of any sale hereunder, all prerequisites to the sale shall be presumed to have been performed, and in any conveyance given hereunder, all statements of facts, or other recitals therein made as to the nonpayment of money secured, or as to the request to the Trustee to enforce this trust, or as to the proper and due appointment of any substitute trustee, or as to the advertisement of sale, or time, place, and manner of sale, or as to any other preliminary fact or thing shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true.

17.    At the option of the Noteholder, with or without any reason, a successor substitute trustee may be appointed by the Noteholder without any formality other than a designation in writing of a successor or substitute trustee, who shall thereupon become vested with and succeed to all the powers and duties given to the Trustee herein named, the same as if the successor or substitute trustee had been named original Trustee herein, and such right to

**DEED OF TRUST**                                                                                          Page 5
4860-6185-2449.1

appoint a successor or substitute trustee shall exist as often and whenever the Noteholder desires. If the Noteholder is a corporation, the corporation may act through any authorized officer, or by an agent or attorney in fact properly authorized by any such officer.

18.    Neither the exercise of, nor the failure to exercise, any option given under the terms of this Deed of Trust shall be considered as a waiver of the right to exercise the same, or any other option given herein, and the filing of a suit to foreclose this Deed of Trust, either on any matured portion of the debt or for the whole debt, shall never be considered an election so as to preclude foreclosure under the power of sale after a dismissal of the suit; nor shall the filing of the necessary notices for foreclosure, as provided in this Deed of Trust, preclude the prosecution of a later suit thereon.

19.    Any sale of the Mortgaged Premises under this Deed of Trust shall, without further notice, create the relation of landlord and tenant at sufferance between the purchaser and Grantors or any person holding possession of the Mortgaged Premises through Grantors, and upon failure of Grantors or such person to surrender possession thereof immediately. Grantors or such person may be removed by a writ of possession of the purchaser, either in the Justice Court having venue or in any other Court hereafter having venue.

20.    Nothing herein contained shall be so construed or operate as to require Grantors to pay interest on the Note or Notes, or any other liability or debt now existing or hereafter to exist hereunder at a rate greater than that allowed by the Laws of the State of Texas, and if any provisions herein contained do, or would, presently or prospectively, operate to make this Deed of Trust or any part thereof void, voidable or ineffective, then such provisions only shall be held for naught and as though not herein contained and shall be without effect upon or prejudice to the remaining provisions, which shall nevertheless remain operative. Any of said contracts for interest shall be held subject to reduction to the highest amount allowed under the Usury Laws of the State of Texas as now or hereafter construed by courts having jurisdiction.

21.    In the event of the passage after the date of this instrument of any law, which deducts any lien on the Mortgaged Premises from the value of the Mortgaged Premises for the purposes of taxation of deeds of trust or debts secured thereby, for state or local purposes, or which law changes the manner of collection of any such taxes so as to affect the interest of the Noteholder, the whole sum secured by this instrument with interest thereon, at the option of the Noteholder, shall immediately become due, payable and collectible without notice to any party.

22.    If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Mortgaged Premises, the unsecured or partially secured portion of the debt shall be completely paid prior to the payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust.

23.    Whenever used the singular number shall include the plural, the plural the singular, the use of any gender shall include all genders. The words "Grantors" and "Noteholder" shall include their heirs, executors, administrators, successors and assigns and the word "Trustee" shall include his respective successors and substitute trustees.

24.    Noteholder shall have the right to become the purchaser at all sales to enforce this trust, being the highest bidder, and to have the amount for which such property is sold credited on the debt then owing.

25.    Grantors will pay all reasonable attorneys' fees and expenses which may be incurred by the Noteholder or Trustee, in enforcing the terms of the Note and this Deed of Trust, or in any suit to which the Noteholder or Trustee may become a party where the Deed of Trust or the Mortgaged Premises are in any manner involved and all expenses incurred in presenting a claim against the estate of a decedent or a bankrupt and will also pay any attorney's fees and expenses reasonably incurred in connection with the assignment to Noteholder of any leases subsequently entered into by Grantors which by the terms hereof are required to be assigned to Noteholder as additional collateral to secure payment of the indebtedness herein secured as well as any and all such fees and expenses reasonably incurred prior to full and final payment of such indebtedness relating to future advances, transfer of title to the premises and similar matters not otherwise provided for herein.

**DEED OF TRUST**                                                                                            **Page 6**
4860-6185-2449.1

26.     With respect to any personal property herein described this Deed of Trust shall constitute a Security Agreement between Grantors and Noteholder, and cumulative of all other rights of Noteholder hereunder, Noteholder shall have all of the rights conferred upon secured parties by the Uniform Commercial Code, as amended, as to this property. This Deed of Trust, as a Financing Statement, covers the following types of property: Minerals, crops and goods that are, or are to become, fixtures as more fully described herein, and related to the real estate described therein, and it is intended that as to those goods and the proceeds thereof, this Deed of Trust shall be effective as a Financing Statement filed as a mineral, crop and fixture filing from the date of its filing for record in the Real Estate Records of the County in which the land is located. Information concerning the security interest created by this instrument may be obtained from the holder of the indebtedness and secured party at the Post Office address as shown in paragraph numbered 1 of this Deed of Trust. Until the lien of this Deed of Trust is released or satisfied of record, Grantors agree, if requested by Noteholder so to do, to execute one or more Financing Statements covering such personal property, in the manner and form required by law and to the satisfaction of Noteholder. Grantors agree to pay Noteholder's charge, to the maximum amount permitted by law, for any statement by Noteholder regarding the obligations secured by this Deed of Trust, requested by Grantors or on behalf of Grantors. On demand, Grantors will promptly pay all costs and expenses of filing Financing Statements, continuation statements, partial releases and termination statements deemed necessary or appropriate by Noteholder to establish and maintain the validity and priority of the security interest of Noteholder or any modification thereof, and all costs and expenses of any searches reasonably required by Noteholder. Noteholder may exercise any or all of the remedies of a secured party available to it under the Uniform Commercial Code, as amended, with respect to such personal property, and it is expressly agreed that if upon default Noteholder should proceed to dispose of the collateral in accordance with the provisions of the Uniform Commercial Code, as amended, ten (10) days notice by Noteholder to Grantors shall be deemed to be reasonable notice under any provision of the Uniform Commercial Code, as amended, requiring such notice; provided, however, that Noteholder may at its option dispose of the collateral in accordance with Noteholder's rights and remedies in respect of the real property pursuant to the provisions of this Deed of Trust, in lieu of proceeding under the Uniform Commercial Code, as amended.

27.     Grantors, upon execution and delivery of this Deed of Trust and the Note hereby secured, were informed that Paragraph 13 hereof grants a power of sale and provides for summary foreclosure procedure at the election of the Noteholder in event of default. And a condition precedent to obtaining the loan represented by the Note hereby secured, Grantors specifically waive the right to procedural due process, i.e. notice and opportunity to be heard in a judicial proceeding in a court having jurisdiction of the parties and the subject matter prior to commencement of such proceedings under the power of sale herein granted.

28.     In the event Grantors, or any owner of the Mortgaged Premises, without first obtaining approval of Noteholder (which approval shall be in Noteholder's sole discretion), should sell, transfer, convey, further encumber, or otherwise dispose of the Mortgaged Premises, or any part thereof, at any time before this Deed of Trust is fully released and discharged, Noteholder shall have the option to declare the indebtedness hereby secured due and payable and if the same is not paid within ten (10) days after the same is declared due and payable, Noteholder may request the Trustee to commence foreclosure proceedings as hereinbefore provided in Paragraph 13, or may commence any other action authorized by this Deed of Trust to enforce the liens herein given. Failure to exercise this option shall not be considered as a waiver of the rights conferred in this Paragraph 28, but said option may be exercised at any time.

29.     Any default by Grantors of any other indebtedness of Grantors to Noteholder shall be deemed an event of default hereunder, entitling Noteholder to exercise all rights and remedies hereunder.

30.     In the event an interest in any of the Mortgaged Premises is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Grantor agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Grantor agrees that Noteholder shall be entitled to seek a deficiency judgment from Grantor and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Mortgaged Premises was sold pursuant to judicial or nonjudicial foreclosure sale. Grantor expressly recognizes that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Grantor, and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Mortgaged Premises as of the date of the foreclosure sale and offset against any

**DEED OF TRUST**
4860-6185-2449.1

Page 7

deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Grantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Mortgaged Premises for purposes of calculating deficiencies owed by Grantor, or any guarantor, and others against whom recovery of a deficiency is sought.

      31.    a.     TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO: (I) KEEP THE MORTGAGED PREMISES INSURED AGAINST DAMAGE IN THE AMOUNT NOTEHOLDER SPECIFIED; (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME NOTEHOLDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) GRANTOR MUST, IF REQUIRED BY NOTEHOLDER, DELIVER TO NOTEHOLDER A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), NOTEHOLDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT THE GRANTOR'S EXPENSE.

      b.     Without limiting the requirements of this Deed of Trust, Grantor has taken and shall continue to take until the Indebtedness is fully repaid and all Obligations are performed in full, such measures as are required by any and all Anti-Terrorism Laws to assure Noteholder that the funds invested in Grantor and/or used to make payments of the Indebtedness and/or the Obligations are derived from (a) transactions and sources that do not violate any Anti-Terrorism Laws nor, to the extent such funds originate outside the United States, do not violate the laws of the jurisdiction from which they originated; and (b) permissible sources under Anti-Terrorism Laws or, to the extent such funds originate outside the United States, under the laws of the jurisdiction from which they originated. If Noteholder reasonably believes that Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties may have breached any of the representations, warranties or covenants set forth in this Deed of Trust or the other Loan Documents relating to any Anti-Terrorism Laws or the identity of any person or entity as a Prohibited Person, then, Noteholder shall have the right, with or without notice to Grantor, to (1) notify the appropriate Governmental Authority and to take such action as such Governmental Authority or applicable Anti-Terrorism Law may direct; (2) withhold advances and segregate the assets constituting the Loan or any of Grantor's funds or assets deposited with or otherwise controlled by Noteholder pursuant to the Loan Documents; (3) decline any payment (or deposit such payment with an appropriate United States Governmental Authority or court) or decline any prepayment or consent request; and/or (4) declare an Event of Default and immediately accelerate the Indebtedness in connection therewith. Grantor agrees that none of Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties will assert any claim (and hereby waives, for itself and on behalf of the foregoing parties any claim it may now or hereafter have) against Noteholder or any of its affiliates, successors, assigns, representatives or agents for any form of damages as a result of the foregoing actions, regardless of whether or not Noteholder's reasonable belief is ultimately demonstrated to be accurate or not. Grantor acknowledges and understands that Noteholder may be required, and in such case hereby authorizes Noteholder to obtain, verify and record information that identifies Grantor, Guarantor, Constituent Party and any other affiliate or related person or entity to the foregoing parties, which information may include the names and addresses of such parties and other information that will allow Noteholder to identify such parties in accordance with the requirements of certain Anti-Terrorism Laws. None of Grantor, Guarantor, Constituent Party nor any person owning any interest in Grantor, Guarantor or Constituent Party (i) is a Prohibited Person, or (ii) has violated any Anti-Terrorism Laws. None of the funds of Grantor, any Constituent Party or Guarantor have been derived from any activity in violation of or prohibited by any Anti-Terrorism Laws. If at any time Grantor obtains knowledge that Grantor, any Constituent Party or Guarantor is, or becomes, a Prohibited Person or are indicted, arraigned or custodially detained on charges or allegations involving or relating to any Anti-Terrorism Laws, Grantor shall immediately notify Noteholder of same. Grantor shall upon request promptly deliver, or shall cause any Guarantor or Constituent Party to promptly deliver, to Noteholder any reasonable evidence (including any requested certifications) confirming compliance by all such parties with all Anti-Terrorism Laws and confirming that none of such parties (nor any person owning an interest in Grantor, Guarantor or any Constituent Party) is a "Prohibited Person."

      c.     The following terms shall be defined as follows:

**DEED OF TRUST**
4860-6185-2449.1

Page 8

(i)      Anti-Terrorism Laws: Any and all present or future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, orders and ordinances of any Governmental Authority relating to terrorism or money laundering, including, without limitation, the United and Strengthening America By Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Pub. L. No. 107-56); the Trading With the Enemy Act (50 U.S.C.A. App 1 et seq.); the International Emergency Economic Powers Act (50 U.S.C.A. §1701-1706); Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001 and the United States Treasury Department's Office of Foreign Assets Control list of "Specifically Designated and Blocked Persons" (as published from time to time in various mediums).

(ii)      Constituent Party: Any (i) general partner, manager or managing member of Grantor, as applicable, and (ii) signatory to this Deed of Trust on Grantor's behalf that is an entity or other business organization.

(iii)      Prohibited Person: Any person or entity that (i) is specifically named or listed in, or is otherwise subject to, any Anti-Terrorism Laws; (ii) is owned or controlled by, or acting for or on behalf of any person or entity specifically named or listed, or otherwise subject to, any Anti-Terrorism Laws; (iii) Noteholder is prohibited from dealing with, or engaging in any transaction with, pursuant to any Anti-Terrorism Laws; or (iv) is affiliated with any person or entity described in clauses (i) through (iii) of this definition.

32.      This Deed of Trust secures future advances to be used for construction of improvements on the Mortgaged Premises. Accordingly, this Deed of Trust constitutes a "construction mortgage" under the Texas Uniform Commercial Code. This Deed of Trust shall also constitute a "fixture filing" for the purposes of the Texas Uniform Commercial Code. All or part of the Mortgaged Premises are or are to become fixtures; information concerning the security interest herein granted may be obtained from the parties hereto at the addresses set forth on the first page hereof. For purposes of the security interest herein granted, the address of Grantors and the address of the Noteholder is set forth herein.

33.      Grantor hereby acknowledges and confirms that no portion of the Mortgaged Premises constitutes any portion of Grantor's homestead, and this lien is being granted for commercial purposes.

34.      Noteholder shall have the right from time to time to place a sign on the Mortgaged Property that financing has been provided by Noteholder. The sign shall be of such size, and contain such information, as Noteholder may reasonably require. Such signage shall be subject to applicable law and deed restrictions, if any.

EXECUTED as of the **23rd day of May, 2022. (DO NOT REVISE DATE)**

> **Rolltide Realty, LLC**
> **a Texas limited liability company**
>
> By: _Joshua L. Patterson_ , Member
>     Joshua L. Patterson
> Its:   Member

STATE OF TEXAS    §
    §
COUNTY OF _Tarrant_    §

This instrument was acknowledged before me on this _23_ day of _May_ , 20_22_ by **Joshua L. Patterson**, Member of **Rolltide Realty, LLC**, a Texas limited liability company, on behalf of said entity.

> LAURIE HOLMSTROM
> Notary Public, State of Texas
> Comm. Expires 03-07-2026
> Notary ID 131479489

_Laurie Holmstrom_
Notary Public in and for the State of Texas

Laurie Holmstrom

**DEED OF TRUST**
4860-6185-2449.1

Page 9

# LOAN AGREEMENT RIDER

**THIS LOAN AGREEMENT RIDER** is made as of this **23rd** day of **May, 2022**, and is incorporated by and into and shall be deemed to amend and supplement any and all documents constituting "Loan Agreements" as defined by Section 26.02 of the Texas Business & Commerce Code by and between **Rolltide Realty, LLC, a Texas limited liability company** ("Borrower"), and **WILDCAT LENDING FUND ONE, LP, a Texas limited partnership** ("Lender"), of the same date and covering the property described on Exhibit "A" attached hereto and incorporated herein by this reference for all purposes, said loan being evidenced by a certain Real Estate Lien Note ("Note") of even date herewith, executed by Borrower, payable to the order of Lender, in the original principal amount of **$139,500.00.**

In addition to the covenants made in the Note and all related loan documents ("Loan Documents"), Borrower and Lender further covenant and agree as follows:

1.  The rights and obligations of Borrower, Guarantor and Lender shall be determined solely from the written Loan Documents, and any prior oral agreements between Lender, Guarantor and Borrower are superseded by and merged into the Loan Documents.

2.  The Loan Documents may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements.

3.  The following Notice is provided pursuant to Section 26.02 of the Texas Business & Commerce Code:
    **THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

    **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**BORROWER:**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson, Member_

    Joshua L. Patterson
Its:    Member

**GUARANTOR(S):**

Joshua L. Patterson

Alan Villalobos

**LENDER:**
**WILDCAT LENDING FUND ONE, LP**
**a Texas limited partnership**
**4800 Dexter Dr.**
**Plano, Texas 75093**

By: **Wildcat Lending Fund One GP, LLC**
    **a Texas limited liability company**
    **General Partner**

    By: **Wildcat Lending, LLC**
        **a Texas limited liability company**
        **Manager**

        By: _____

        Its: _____

1028 E. Bowie St., Ft. Worth, TX 76104
**LOAN AGREEMENT RIDER - TX**
4874-8798-1345.1

Page 1

## EXHIBIT "A"

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

4874-8798-1345.1

WHEN RECORDED, RETURN TO:
Wildcat Lending Fund One, LP
4800 Dexter Dr.
Plano, Texas  75093

## ASSIGNMENT OF RENTS AND LEASES

STATE OF TEXAS        §
                            §     **KNOW ALL MEN BY THESE PRESENTS:**
COUNTY OF TARRANT    §

This **ASSIGNMENT OF RENTS AND LEASES** (this "Assignment") is dated as of this the **23rd day of May, 2022** from **Rolltide Realty, LLC, a Texas limited liability company** ("Assignor").

## W I T N E S S E T H:

WHEREAS, the Assignor is the owner in fee simple of that certain real property and improvements located in **Tarrant** County, Texas, and more particularly described in Exhibit "A" attached hereto (said land, together with all rights and appurtenances thereto, and all improvements presently located on or hereafter constructed thereon, if any, being hereinafter collectively called the "Property"); and

WHEREAS, Assignor has executed and delivered to Assignee a certain "Real Estate Lien Note" (the "Note"), in the original principal amount of **$139,500.00**, of even date herewith, payable to the order of **Wildcat Lending Fund One, LP** ("Assignee"), together with a certain "Deed of Trust" (the "Deed of Trust"), of even date herewith, conveying the Property to **Michael E. Gillman**, Trustee, for the benefit of Assignee as security for payment of the Note (the indebtedness evidenced by the Note, Deed of Trust, and any and all other documents relating to, and executed in connection with, or securing payment of, said indebtedness, is hereinafter referred to as the "Loan"); and

WHEREAS, in order to induce Assignee to make the Loan to Assignor, and to better secure the Loan, Assignor desires to assign to Assignee all present and future leases demising all or any part of the Property, including, but not limited to, billboard leases, and all management agreements relating thereto (hereinafter called a "Lease" or the "Leases"), and rentals and other monies due and to become due to Assignor under the Leases, and Assignee desires to accept same.

NOW, THEREFORE, in consideration of the above premises, Ten Dollars and No Cents ($10.00), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by Assignor, Assignor hereby covenants and agrees with Assignee as follows:

1028 E. Bowie St., Ft. Worth, TX 76104
**ASSIGNMENT OF RENTS AND LEASES - TX**                                              **Page 1**
4867-3287-5553.1

1.     Assignor hereby sells, assigns, transfers and sets over unto Assignee, and Assignee's successors or assigns (a) the Leases, together with any extensions or renewals thereof and any guaranties of or other security for any tenant's obligations thereunder; and (b) all of the rents, income, receipts, revenues, insurance proceeds, judgments, issues and profits now due or which may hereafter become due under the Leases or any extensions or renewals thereof, as well as all monies due and to become due to Assignor under the Leases for services, materials or installations supplied, whether or not the same were supplied under the terms of the Leases (such rents, income, receipts, revenues, issues, profits and other monies assigned thereby being hereinafter called the "Rents"), together with any and all rights and remedies which Assignor may have against any tenant under any of the Leases or others in possession of the Property or any part thereof for the collection or recovery of monies so assigned. TO HAVE AND TO HOLD the same unto Assignee, and Assignee's successors or assigns.

2.     This Assignment is made to secure (a) payment of the Loan and all interest and principal from time to time outstanding thereon as evidenced by the Note (together with all renewals, extensions, amendments, increases or modifications thereof) and the payment of all other sums which Assignor is or may from time to time be obligated to pay or cause to be paid to Assignee, in connection with the Loan as evidenced by the Note; and (b) performance of all obligations thereunder and under the Deed of Trust, and any other instrument evidencing or securing the Note, and renewals and extensions, amendments, increases or modifications thereof and any indebtedness represented thereby.

3.     Assignor hereby represents, warrants and agrees that:

(a)     Assignor has the right, power and capacity to make this Assignment and that no person, firm or corporation other than Assignor has or will have any rights, title or interest as landlord in or to the Leases or the Rents.

(b)     Assignor will, at Assignor's sole cost and expense, perform and discharge all of the obligations and undertakings of the landlord under the Leases. Assignor will use all reasonable efforts to enforce or secure the performance of each and every obligation and undertaking of the tenants under the Leases and will appear in and prosecute or defend any action or proceeding arising under, or in any manner connected with, the Leases or the obligations and undertakings of the tenants thereunder.

(c)     Assignor will not, without the prior written consent of Assignee, (i) pledge, transfer, mortgage or otherwise encumber or assign the Leases or the Rents; (ii) waive, excuse, condone or in any manner release or discharge any tenant under any of the Leases; (iii) disaffirm, cancel, terminate or consent to any surrender of any of the Leases; (iv) modify, extend or in any way alter the terms of any of the Leases so as to reduce or diminish or postpone the payments of Rents; or (v) anticipate Rents more than 30 days prior to accrual.

(d)     Any default by Assignor in the performance of any obligation or undertaking hereunder shall constitute and be deemed to be an event of default under the Deed of Trust so as to entitle Assignee to exercise any and all of the rights and remedies thereunder, including the right to declare all sums payable under the Note immediately due and payable.

(e)     There are no existing defaults under any of the Leases, and Assignor has not performed any act or executed any instrument which might prevent Assignee from operating under any of the terms and provisions hereof or which would limit Assignee in such operation.

(f)     All Leases demising the Property and shall be bona fide, arms length Leases, and shall be reasonably acceptable to Assignee, and shall have a term of at least one (1) year.  Prior to Assignor's execution thereof, each Lease, if requested by Assignee, shall be submitted to Assignee for its written approval, which approval shall not be unreasonably withheld. Assignee shall include in each of the Leases a provision requiring, and Assignee shall be entitled to receive from any such tenant, from time to time, an estoppel certificate representing certain matters with respect to such Lease (or if such representation cannot be made, an explanation thereof), including, but not limited to, the following: that such Lease is in full force and effect; that the tenant is physically occupying the premises; that the tenant has no offsets or defenses thereto; the current rent being paid; the date to which rent has been paid; that the landlord is not in default thereunder; and that to tenant's best knowledge, there have been no prior assignments of such Lease, with said estoppel certificate to otherwise be in form and substance reasonably acceptable to Assignee.

4.     These presents shall not be deemed or construed to constitute Assignee as a mortgagee in possession of the Property or to obligate Assignee to take any action hereunder, to incur expenses or to perform or discharge any obligation, duty or liability hereunder or under the Leases.  Until the indebtedness evidenced by the Note shall have been paid in full, Assignor will from time to time execute and deliver unto Assignee, upon demand,  any and all writings that Assignee may reasonably deem necessary or desirable to carry out the purpose and intent hereof, or to enable Assignee to enforce any right or rights hereunder.

5.     The term "Event of Default" as used herein shall mean, subject to any applicable notice and cure periods contained in the Loan Documents, the occurrence of any one of the following:

(a)     If Assignor shall fail to comply with any of the covenants, duties or obligations of Assignor herein;

(b)     If a default shall occur under the Note, the Deed of Trust, or any instrument relating to, evidencing or securing the Loan; or

(c)   If at any time any representation or warranty made by Assignor herein shall be materially incorrect and the conditions rendering such representation or warranty materially incorrect are not modified so as to make such representation and warranty materially correct promptly after written notice and demand to Assignor.

6.   Notwithstanding anything contained in any other document relating to the Loan, this Assignment is a present and absolute assignment of Rents. So long as no Event of Default shall occur or remain uncured and shall be continuing, Assignor shall have a license to collect all of the Rents. From and after the occurrence of an Event of Default, and so long as such Event of Default shall be continuing (whether or not Assignee shall have exercised Assignee's option to declare the Note due and payable), such license shall be revoked and all Rents assigned hereunder shall be paid directly to Assignee; and Assignee may notify the tenants under the Leases or any other parties in possession of the Property to pay all of the Rents directly to Assignee, for which written advice of this Assignment to such parties shall be sufficient notice. Rents so paid to Assignee may be applied by Assignee, at Assignee's sole discretion, to the payment of the costs and expenses of the operation of the Property, to the payment of accrued interest and principal on the Loan as represented by the Note and/or to the prepayment of the Loan as represented by the Note, all in such order and in such respective amounts as Assignee shall from time to time determine.

7.   Anything to the contrary or seemingly to the contrary notwithstanding, (a) Assignor hereby assigns to Assignee any award made hereafter to Assignor in any court proceeding involving any of the tenants under the Leases, in any bankruptcy, insolvency or reorganization proceeding in any state or federal court, and any and all payments made by said tenants in lieu of rent; and (b) Assignor hereby appoints Assignee as Assignor's irrevocable attorney-in-fact to appear in any action and/or to collect any such award or payment; any such assignment and appointment to become operative upon the occurrence of an Event of Default and to remain in full force and effect so long as any such Event of Default continues.

8.   Assignor, upon the occurrence of an Event of Default, hereby authorizes and agrees to assist Assignee, at Assignee's option, to enter and take possession of the Property and to manage and operate the same; to collect as herein provided all or any Rents accruing therefrom and from the Leases; to let or relet the Property or any part thereof; to cancel and modify leases, evict tenants and bring or defend any suits in connection with the possession of the Property, in Assignee's own name or Assignor's name, pursuant to the terms of the Leases; to make repairs as Assignee deems appropriate; and to perform such other acts in connection with the management and operation of the Property as Assignee, in Assignee's discretion, may deem proper.

9.   The receipt by Assignee of any Rents pursuant to this Assignment after the institution of foreclosure proceedings under the Deed of Trust shall be on account, and shall not cure any such Event of Default or affect such proceedings or any sale pursuant thereto.

10.   Assignee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Assignor under any of the Leases, and Assignor hereby agrees to

**ASSIGNMENT OF RENTS AND LEASES**                                    **Page 4**
4867-3287-5553.1

indemnify Assignee for, and to save Assignee harmless from, any and all liability arising from any of the Leases or from this Assignment. This Assignment shall not place responsibility for the control, care, management or repair of the Property upon Assignee, or make Assignee responsible or liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or damage or injury or death to any tenant, licensee, employee or stranger; provided, however, this covenant to indemnify and save Assignee harmless shall not apply to any liability caused by Assignee's gross negligence or willful misconduct occurring while Assignee has actual possession of the Property and is operating same pursuant hereto, upon foreclosure or otherwise.

11.    The failure of Assignee to enforce any of the terms, covenants or conditions hereof shall not be construed or deemed to be a waiver of any rights or remedies hereunder. Assignee shall have the full right, power and authority to enforce this Assignment, or any of the terms, covenants or conditions hereof, at any time or times that Assignee shall deem fit.

12.    All notices required or permitted to be given hereunder shall be deemed properly given if given in accordance with the terms of the Deed of Trust.

13.    The full performance of the Deed of Trust and the duly recorded release thereof shall also operate as a reassignment and be effective to reassign the Rents from the date of such release or reconveyance regardless of the mention or inclusion of this Assignment therein.

14.    This Assignment applies to and binds the parties hereto and their respective successors, assigns, and legal representatives, as well as any subsequent owner of the Property (or any portion thereof) and any assignee of the Deed of Trust. Any provisions in any other agreement creating rights in Assignee other than those created herein shall be deemed incorporated herein by reference and made a part hereof for all purposes.

15.    In the event of a conflict between this Assignment and the Deed of Trust (with respect to the assignment of rents and leases contained herein only), this Assignment shall control. In addition, notwithstanding anything contained herein to the contrary, in the event of a conflict between the terms of this Assignment and the Texas Assignment of Rents Act ("TARA"), the provisions of TARA shall control.

16.    By acceptance of this Assignment, Assignee agrees to the terms hereof.

**IN WITNESS WHEREOF,** Assignor has caused this instrument to be executed as of the date first above written.

ASSIGNOR:

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson_ , Member
    **Joshua L. Patterson**
Its:    **Member**

STATE OF TEXAS        §
                      §
COUNTY OF _Tarrant_   §

This instrument was acknowledged before me on this _23_ day of _May_ , 20_22_ by **Joshua L. Patterson, Member** of **Rolltide Realty, LLC,** a **Texas limited liability company**, on behalf of said entity.

_Laurie Holmstrom_
Notary Public, State of Texas
Laurie Holmstrom

LAURIE HOLMSTROM
Notary Public, State of Texas
Comm. Expires 03-07-2026
Notary ID 131479489

## EXHIBIT "A"

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

## NOTICE OF RIGHT TO RECEIVE A COPY OF APPRAISAL

You have a right to receive a copy of the appraisal report used in connection with your application for a mortgage loan. If you would like to receive a copy, please contact us at the address below. We must hear from you no later than ninety (90) days after we notify you about the action taken on your credit application or your withdrawal of your application.

In your letter, please provide your name and mailing address, as well as the address of the property on which the appraisal was performed. Also, please indicate the date of your application, the office where you applied and your application or loan number, if any.

### ACKNOWLEDGEMENT

By signing below, you acknowledge that you have read and understood this Notice of Your Right to Receive a Copy of the Appraisal.

Date:   **May 23, 2022**

**BORROWER:**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson, Member_
     **Joshua L. Patterson**
Its:   **Member**

### RECORD OF APPRAISAL PROVIDED

A completed copy was __ mailed __ given to the applicant(s) on _____.

**WILDCAT LENDING FUND ONE, LP**
**a Texas limited partnership**
**4800 Dexter Dr.**
**Plano, Texas  75093**

By:  **Wildcat Lending Fund One GP, LLC**
    **a Texas limited liability company**
    **General Partner**

    By:  **Wildcat Lending, LLC**
        **a Texas limited liability company**
        **Manager**

        By: _____

        Its: _____

1028 E. Bowie St., Ft. Worth, TX 76104
**NOTICE OF RIGHT TO RECEIVE A COPY OF APPRAISAL - TX – Solo Page**
4863-9752-7841.1

**Form W-9**

(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer Identification Number and Certification

Give Form to the requester. Do not send it to the IRS.

Name (as shown on your income tax return)

**Rolltide Realty, LLC**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☐ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☒ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ ------------

☐ Exempt payee

☐ Other (see instructions) ▶

Address (number, street, and apt. or suite no.)

**1910 Crestridge Drive**

City, state, and ZIP code

**Arlington, TX 76013**

Requester's name and address (optional)

**Wildcat Lending Fund One, LP**
**4800 Dexter Dr.**
**Plano, Texas 75093**

List account number(s) here (optional)

### Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

**Employer identification number**

8 7 – 4 6 4 9 4 5 3

### Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**  Signature of U.S. person ▶ *Joshua L. Hott*   Date ▶ 5/23/2022

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States in the following cases:

• The U.S. owner of a disregarded entity and not the entity,

• The U.S. grantor or other owner of a grantor trust and not the trust, and

• The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

**Updating Your Information**

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income will be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a domestic owner, the domestic owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, you must complete an appropriate Form W-8.

**Note.** Check the appropriate box for the federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the tax classification in the space provided. If you are an LLC that is treated as a partnership for federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business name, trade, or DBA name on the "Business name/disregarded entity name" line.

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the "Business name/disregarded entity name," sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 5 and 7 through 13. Also, C corporations. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, below, and items 4 and 5 on page 4 indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see *Exempt Payee* on page 3.

**Signature requirements.** Complete the certification as indicated in items 1 through 3, below, and items 4 and 5 on page 4.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

Form W-9 (Rev. 12-2011)

**Page 4**

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

## WILDCAT LENDING FUND ONE, LP

## AUTHORIZATION FOR AUTOMATIC PAYMENT DEDUCTION

### (REQUIRED)                     May 23, 2022

**Rolltide Realty, LLC**
**1910 Crestridge Dr.**
**Arlington, TX 76013**

This is your authority to charge my depository account no. at _____   _____
                                                                                                (Center)                          (Account)

on the 1ˢᵗ day of each month for payment to:

_ Installment Note                          # _____

_ PLC / HELOC Account                       # _____

**X**      Account Information:
           Bank Name:            Bank of America
           ACH routing #:        ███████████
           Account number:       ███████ 3614
           Account name          Rolltide Realty, LLC

I understand that a:

**X** Payment amount according to Note and term.

_ Additional principal payment amount of $ _____ will be deducted on the above authorized date.

This authorization is to remain in effect until cancelled by me in writing.

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson_, Member        5/23/2022
       **Joshua L. Patterson**                   **Date**
Its:  **Member**

┌─────────────────────────────────┐
│   Attach a <u>VOIDED check</u>        │
│              or                 │
│        <u>Deposit Slip</u>            │
│      for routing number         │
└─────────────────────────────────┘

# NOTICE OF PENALTIES FOR MAKING FALSE OR MISLEADING STATEMENT

***WARNING:***

Intentionally or knowingly making a materially false or misleading statement to obtain property or credit, including a mortgage loan, is a violation of Section 32.32 of the Texas Penal Code, and, depending on the amount of the loan or value of the property, is punishable by imprisonment for a term of 2 years to 99 years and a fine not to exceed $10,000.00.

I/we, the undersigned loan applicant(s), represent that I/we have received, read, and understand this notice of penalties for making a materially false or misleading written statement to obtain a loan.

I/we represent that all statements and representations contained in my/our written loan application, are true and correct as of the date of loan closing.

**May 23, 2022**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson_, Member
     **Joshua L. Patterson**
Its:    **Member**

STATE OF TEXAS    §
                    §
COUNTY OF _Tarrant_ §

Before me, the undersigned notary, on the _23_ day of _May_, 202_2_ personally appeared **Joshua L. Patterson**, **Member** of **Rolltide Realty, LLC**, a Texas limited liability company, a person whose identity is known to me. After I administered an oath to them, they said they read the above notice and that the facts stated therein are within their personal knowledge and are true and correct.

_Laurie Holmstrom_
Notary Public in and for the State of Texas
Laurie Holmstrom

> LAURIE HOLMSTROM
> Notary Public, State of Texas
> Comm. Expires 03-07-2026
> Notary ID 131479489

1028 E. Bowie St., Ft. Worth, TX 76104
**NOTICE OF PENALTIES FOR MAKING FALSE OR MISLEADING STATEMENT TX**
4854-2444-9313.1

## ERROR AND OMISSION COMPLIANCE AND
## DOCUMENT AGREEMENT

Date: **May 23, 2022**

Name and Address of Borrower(s):
**Rolltide Realty, LLC
1910 Crestridge Dr.
Arlington, TX 76013**

Property Address:                       **See Exhibit A attached hereto.**

Loan:  Loan for **Rolltide Realty, LLC, a Texas limited liability company** ("Borrower"), from WILDCAT LENDING FUND ONE, LP, a Texas limited partnership ("Lender"), in the original principal amount of **$139,500.00**.

### Lost, Misplaced, Misstated, or Inaccurate or Omissions

Occasionally, documents evidencing loans (such as notes) or securing loans (such as deeds of trust) or reflecting costs associated with the loans are either lost or misplaced or inaccurately reflect the true and correct covenants, terms, and conditions of the loan or have certain omissions or mistakes.  Loss, misplacement, misstatement, omission or inaccuracy can be solely caused by the Lender, solely by the Borrower (whether one or more), the closing agent, the Lender's attorney, or otherwise.  The terms of this agreement pertain to all documents associated with the above referenced loan (the "Loan") whether originated by Lender, Borrower, closing agent, Lender's attorney, or third party contractor.

### Agreement to Replace Lost or Misplaced Documents and to Correct Misstated or Inaccurate Documents or Omissions Thereto

Regardless of the reason for any loss, misplacement, misstatement, omission or inaccuracy in any document evidencing and/or securing the Loan, Borrower agrees to execute and/or initial and deliver to Lender any documents Lender, or any party on behalf of Lender, deems necessary to replace or correct the lost, misplaced, misstated, omitted or inaccurate document(s) or term thereof.  The documents Lender or a party on behalf of Lender requests Borrower to execute and/or initial and deliver pursuant to this paragraph shall hereinafter be referred to as "Replacement Documents."  Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by Borrower of a written request from Lender, or a party acting on behalf of Lender.

### Failure to Deliver Replacement Documents can Constitute Default

Borrower's failure or refusal to execute and/or initial and deliver the Replacement Documents to Lender or a party acting on behalf of Lender within ten (10) days after written request by Lender or other party shall, at Lender's sole option, constitute a default under the Note evidencing the Loan.

### Borrower Liable for Loss Attributed to Failure to Execute and/or Initial and Deliver the Replacement Documents

Should Borrower fail or refuse to execute and/or initial and deliver the Replacement Documents to Lender or to another party acting on behalf of Lender within ten (10) days after written request by Lender or other party, Lender shall be entitled to exercise all Lender's rights and remedies under the Loan, including, but not limited to, commencement of foreclosure proceedings under the deed of trust, and Borrower shall be responsible and liable for any loss suffered by Lender due to such failure or refusal.

1028 E. Bowie St., Ft. Worth, TX 76104
**ERROR AND OMISSION COMPLIANCE AND DOCUMENT AGREEMENT - TX**                    **Page 1**
4873-8725-2513.1

**Agreement Benefits Lender's Successors and Binds Borrower's Successors**

This agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, personal representatives, successors and assigns of Borrower.

**BORROWER:**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson, Member_

      **Joshua L. Patterson**

Its:    **Member**

4873-8725-2513.1

EXHIBIT "A"

LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.

## USA PATRIOT ACT NOTIFICATION

The following notification is provided to the Purchasers pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. § 5318:

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal Law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product. What this means for the purchasers: When the purchaser opens an account, if the purchaser is an individual, bank will ask for purchaser's name, residential address, date of birth and other information that will allow bank to identify purchaser, and, if purchaser is not an individual, bank will ask for purchaser's name, employer identification number, business address, and other information that will allow bank to identify purchaser. Bank may also ask, if the purchaser is an individual, to see purchaser's driver's license or other identifying documents, and, if applicant is not an individual, to see purchaser's legal organizational documents or other identifying documents.**

I hereby acknowledge receipt of this notification on the **23rd day of May, 2022**.

<div style="text-align:right">

**Rolltide Realty, LLC**
**a Texas limited liability company**


By: _Joshua L. Green_, Member
    **Joshua L. Patterson**
Its:   **Member**

</div>

## TEXAS COLLATERAL INSURANCE PROTECTION NOTICE

In connection with a certain loan (the "Loan") from WILDCAT LENDING FUND ONE, LP (the "Lender"), to **Rolltide Realty, LLC, a Texas limited liability company** (the "Borrower"), in the original principal amount of **$139,500.00** which Loan is secured by a deed of trust lien encumbering certain real property described on Exhibit "A" attached hereto and incorporated herein by this reference for all purposes, Lender hereby notifies Borrower of the following:

**BORROWER IS REQUIRED TO:**

1. **KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT LENDER SPECIFIES;**

2. **PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS, OR AN ELIGIBLE SURPLUS LINES INSURER; AND**

3. **NAME LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS.**

**BORROWER SHALL DELIVER TO LENDER A COPY OF THE REQUIRED POLICIES OF INSURANCE AND PROOF OF PAYMENT OF THE PREMIUMS, AS SET FORTH IN THE LOAN DOCUMENTS.**

**PLEASE BE ADVISED THAT IF BORROWER FAILS TO MEET ANY OF THE ABOVE REQUIREMENTS, LENDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER, AT BORROWER'S SOLE COST AND EXPENSE.**

**THE UNDERSIGNED HEREBY ACKNOWLEDGE AND CONFIRM RECEIPT OF THE ABOVE. THIS NOTICE IS DATED EFFECTIVE MAY 23, 2022.**

> **Rolltide Realty, LLC**
> **a Texas limited liability company**
>
> By: _Joshua L. Poo_ , Member
>   **Joshua L. Patterson**
> **Its:   Member**

1028 E. Bowie St., Ft. Worth, TX 76104
**TEXAS COLLATERAL INSURANCE PROTECTION NOTICE - TX**
4895-1809-0017.1

## EXHIBIT "A"

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

## NONHOMESTEAD AND BUSINESS PURPOSE AFFIDAVIT

Date:          **May 23, 2022**

Borrower:      **Rolltide Realty, LLC**
               **1910 Crestridge Dr.**
               **Arlington, TX 76013**

Lender:        **WILDCAT LENDING FUND ONE, LP**
               **4800 Dexter Dr.**
               **Plano, TX  75093**

Deed of Trust: Deed of Trust dated as of even date herewith, executed by Borrower for the benefit of Lender and granting a lien on the Mortgaged Premises described therein (the "Deed of Trust")

Note:          Promissory Note executed by Borrower and payable to Lender in the amount of **$139,500.00**

Before me, the undersigned authority, on this day personally appeared Borrower, who, being by me first duly sworn, the oath of the undersigned says:

I am the owner of the Mortgaged Premises described in the Deed of Trust. As such I have personal knowledge of all facts stated in this affidavit. On oath I swear that the following statements are true and correct.

1.   I do not now reside on the Mortgaged Premises (as such term is defined in the Deed of Trust) or claim it as either a business or residence homestead. I do not presently intend to reside on the Mortgaged Premises or claim it as a business or residence homestead. No part of the Mortgaged Premises is contiguous with any other part of the Homestead Property (as defined below). I renounce and disclaim any homestead right, interest, or exemption in the Mortgaged Premises.

2.   I now reside on the property described below and use and claim it as my legal homestead (the "Homestead Property"). The Homestead Property is:

     **1910 Crestridge Dr.**
     **Arlington, TX 76013**

3.   The Homestead Property is improved with a dwelling house and is amply sufficient as a residence homestead for me. Fee simple title to the Homestead Property is vested in me. I set apart and designate the Homestead Property as the homestead to which my family is entitled, under the Constitution and the laws of the State of Texas, exempt from forced sale. The Homestead Property is all of the property and the only property to which I am now entitled as a homestead exempt from forced sale.

1028 E. Bowie St., Ft. Worth, TX 76104
**NONHOMESTEAD AND BUSINESS PURPOSE AFFIDAVIT – TX – PAGE 1**
4883-7717-3793.1

4.   The loan as evidenced by the Note is solely for business or commercial purposes and is not for personal, family, household, or agricultural purposes.

5.   This transaction is specifically exempted under Section 226.3(a) of Regulation Z issued by the Board of Governors of the Federal Reserve System and under Section 1063 of Title 15 of the United States Code, and no disclosures are required to be given under such regulation and statute in connection with this transaction.   I make this affidavit and am authorized to make this affidavit to induce Lender to make the loan, and I am aware that it is in reliance upon the truth of the statements contained in this affidavit that Lender does so without giving me the disclosures that otherwise may be required under such regulation and statute.

**Borrower:**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson_, Member
       **Joshua L. Patterson**
**Its:    Member**

STATE OF TEXAS              §
                           §
COUNTY OF _Tarrant_         §

This   instrument   was   acknowledged   before   me   on   this   _23_   day   of _____, 20_22_ by **Joshua L. Patterson, Member** of **Rolltide Realty, LLC, a Texas limited liability company**.

_Laurie Holmstrom_
Notary Public in and for the State of Texas
Laurie Holmstrom

LAURIE HOLMSTROM
Notary Public, State of Texas
Comm. Expires 03-07-2026
Notary ID 131479489

# RESOLUTIONS OF

# ROLLTIDE REALTY, LLC

**RESOLVED**, that **Rolltide Realty, LLC**, a **Texas limited liability company** ("Company"),

borrow from **Wildcat Lending Fund One, LP**, a Texas limited partnership (the "Lender"), up to the sum

of **$139,500.00** and to secure said loan with the following described property as collateral, to-wit:

> LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE
> CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO
> THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78,
> PLAT RECORDS, TARRANT COUNTY, TEXAS.

and **Joshua L. Patterson**, acting as the **Member** of the Company, is hereby authorized and directed, in

the name of and on behalf of the Company, to execute and deliver to the Lender such promissory notes,

loan agreements, deeds of trust, security agreements, and other instruments evidencing, governing, and

securing the loan as the Lender may require, and to take such other and further action as he or she may, in

his or her sole and absolute discretion, approve to consummate such transaction; and

**FURTHER RESOLVED,** that the authority conferred upon the aforesaid **Member** by these

resolutions shall remain in full force and effect until written notice of revocation has been received by the

Lender.

## CERTIFICATE OF MEMBERS

The undersigned, being all of the **MEMBERS** of **Rolltide Realty, LLC**, do hereby certify that

the foregoing is a true and correct copy of resolutions adopted by **Rolltide Realty, LLC**, on **May 23,**

**2022** and such resolutions have not been amended in any manner and are in full force and effect on the

date hereof.

1028 E. Bowie St., Ft. Worth, TX 76104
**Resolutions - TX– Page 1**
4883-7723-9329.1

EXECUTED this **23rd day of May, 2022.**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson, Member_
      **Joshua L. Patterson**
Its:    **Member**

By: _Alan Villalobos, Member_
      **Alan Villalobos**
Its:    **Member**

# GUARANTY

This **GUARANTY** ("Guaranty") is executed effective as of **May 23, 2022**, by **Joshua L. Patterson** ("Guarantor"), for the benefit of **WILDCAT LENDING FUND ONE, LP** ("Lender").

## W I T N E S S E T H:

**WHEREAS, Rolltide Realty, LLC, a Texas limited liability company** ("Borrower"), has executed that certain Real Estate Lien Note, dated of even date herewith, payable to the order of the Lender, in the original stated principal amount of **$139,500.00** (together with all renewals, modifications, increases and extensions thereof, the "Note") under which Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a loan ("Loan") which is secured by the liens and security interests of a Deed of Trust of even date herewith, and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan (collectively the "Loan Documents"); and

**WHEREAS,** Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment to Lender of the Guaranteed Debt (as herein defined); and

**WHEREAS,** Guarantor is the owner of a direct or indirect interest in Borrower, and Guarantor will directly benefit from Lender's making the Loan to Borrower.

**NOW, THEREFORE,** as an inducement to Lender to enter into the Loan Documents and to make the Loan to Borrower as described therein, and to extend such additional credit as Lender may from time to time agree to extend, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

## ARTICLE I.
## NATURE AND SCOPE OF GUARANTY

1.1    Guaranty of Obligation.  Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Debt (as herein described) as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity, or otherwise.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Debt as a primary obligor.

1.2    Definition of Guaranteed Debt.  As used herein, the term "Guaranteed Debt" means all of the following:

      A.    All principal, interest, attorneys' fees, commitment fees, liabilities for costs and expenses and other indebtedness, obligations and liabilities of Borrower to Lender at any time created or arising in connection with the Loan, or any amendment thereto or substitution therefor, including but not limited to all indebtedness, obligations and liabilities of Borrower to Lender arising under the Note, or under any renewals, modifications, increases and extensions of the Note, or under the Loan Documents;

      B.    All liabilities of Borrower for future advances, extensions of credit, sales on account or other value at any time given or made by Lender to Borrower arising under the Loan Documents, whether or not the advances, credit or value are given pursuant to commitment;

1028 E. Bowie St., Ft. Worth, TX 76104
**GUARANTY - TX**                                                                                      Page 1
4885-4488-0417.1

C.    Any and all other indebtedness, liabilities, obligations and duties of every kind and character of Borrower to Lender, whether now or hereafter existing or arising, regardless of whether such present or future indebtedness, liabilities, obligations or duties are direct or indirect, related or unrelated, liquidated or unliquidated, primary or secondary, joint, several, or joint and several, or fixed or contingent;

D.    Any and all post-petition interest and expenses (including attorneys' fees) whether or not allowed under any bankruptcy, insolvency, or other similar law; and

E.    All costs, expenses and fees, including but not limited to court costs and attorneys' fees, arising in connection with the collection of any or all amounts, indebtedness, obligations and liabilities of Borrower to Lender described in items (A) through (D) of this Section.

1.3    Nature of Guaranty.  This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Debt arising or created after any attempted revocation by Guarantor and after (if Guarantor is a natural person) Guarantor's death (in which event this Guaranty shall be binding upon Guarantor's estate and Guarantor's legal representatives and heirs).  The fact that at any time or from time to time the Guaranteed Debt may be increased, reduced or paid in full shall not release, discharge or reduce the obligation of Guarantor to Lender with respect to indebtedness or obligations of Borrower thereafter incurred (or other Guaranteed Debt thereafter arising) under the Note or otherwise.  This Guaranty may be enforced by Lender and any subsequent holder of the Guaranteed Debt and shall not be discharged by the assignment or negotiation of all or part of the Guaranteed Debt.

1.4    Guaranteed Debt Not Reduced by Offset.  The Guaranteed Debt and the liabilities and obligations of Guarantor to Lender hereunder shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Debt, whether such offset, claim or defense arises in connection with the Guaranteed Debt (or the transactions creating the Guaranteed Debt) or otherwise.  Without limiting the foregoing or the Guarantor's liability hereunder, to the extent that Lender advances funds or extends credit to Borrower, and does not receive payments or benefits thereon in the amounts and at the times required or provided by applicable agreements or laws, Guarantor is absolutely liable to make such payments to (and confer such benefits on) Lender, on a timely basis.

1.5    Payment by Guarantor.  If all or any part of the Guaranteed Debt shall not be punctually paid when due, whether at maturity or earlier by acceleration or otherwise, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Debt to Lender at Lender's address as set forth herein.  Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Debt, and may be made from time to time with respect to the same or different items of Guaranteed Debt.  Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

1.6    No Duty to Pursue Others.  It shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce such payment by Guarantor, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Guaranteed Debt or any other person, (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Guaranteed Debt, (iii) enforce Lender's rights against any other guarantors

of the Guaranteed Debt, (iv) join Borrower or any others liable on the Guaranteed Debt in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Guaranteed Debt, or (vi) resort to any other means of obtaining payment of the Guaranteed Debt. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Debt.

1.7     Waivers. Guarantor agrees to the provisions of the Loan Documents, and hereby waives notice of (i) any loans or advances made by Lender to Borrower, (ii) acceptance of this Guaranty, (iii) any amendment or extension of the Note or of any other Loan Documents, (iv) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Property securing the Loan, (v) the occurrence of any breach by Borrower or event of default under the Loan Documents, (vi) Lender's transfer or disposition of the Guaranteed Debt, or any part thereof, (vii) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Debt, (viii) protest, proof of nonpayment or default by Borrower, or (ix) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Debt and the obligations hereby guaranteed. The parties intend that Guarantor shall not be considered a "debtor" as defined in Tex. Bus. & Com. Code Ann. §9.105, as amended (and any successor statute thereto).

1.8     Payment of Expenses. In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder. The covenant contained in this Section shall survive the payment of the Guaranteed Debt.

1.9     Effect of Bankruptcy. In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Debt, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect, and this Guaranty shall remain in full force and effect. It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

1.10     Waiver of Subrogation, Reimbursement and Contribution. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating the Guarantor to the rights of Lender) to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Debt for any payment made by Guarantor under or in connection with this Guaranty or otherwise.

1.11     Waivers and Related Agreements. Guarantor hereby expressly waives: (i) any right to revoke this Guaranty with respect to the Guaranteed Debt; (ii) any right to require Lender to do any of the following before Guarantor is obligated to pay or perform the Guaranteed Obligations or before Lender may proceed against Guarantor: (A) sue or exhaust remedies against Borrower or any other person liable for the Guaranteed Debt or any portion thereof; (B) sue on an accrued right of action in respect of any of the Guaranteed Debt or bring any other action, exercise any other right, or exhaust any other remedy; or (C) enforce rights against Borrower's assets or the collateral pledged by Borrower to secure the Guaranteed Debt; (iii) any right relating to the timing, manner or conduct of Lender's enforcement of

**GUARANTY**
4885-4488-0417.1

Page 3

rights against Borrower's assets or the collateral pledged by Borrower to secure the Guaranteed Debt; (iv) if Guarantor and Borrower (or any other Person) have each pledged assets to secure the Guaranteed Debt, any right to require Lender to proceed first against collateral pledged by Borrower (or any other person) before proceeding against the collateral pledged by Guarantor; (v) promptness, diligence, notice of any default, notice of nonpayment or nonperformance, notice of acceleration or intent to accelerate, demand for payment or performance, acceptance or notice of acceptance of this Guaranty, presentment, notice of protest, notice of dishonor, notice of the incurring by Borrower of additional indebtedness, notice of any suit or other action by Lender against Borrower or any other Person, any notice to any person liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Debt and this Guaranty; (vi) each of the foregoing rights or defenses, regardless of whether they arise under (A) Rule 31 of the Texas Rules of Civil Procedure, (B) Chapter 17, Section 17.001 of the Texas Civil Practice and Remedies Code, (C) Chapter 43 of the Texas Civil Practice and Remedies Code, or (D) any other statute or law, common law, in equity, under contract or otherwise, or under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law; and (vii) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, and under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law.

1.12    Borrower. The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

## ARTICLE II.
## EVENTS AND CIRCUMSTANCES NOT REDUCING
## OR DISCHARGING GUARANTOR'S OBLIGATIONS

Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which Guarantor might otherwise have as a result of or in connection with any of the following:

2.1    Modifications. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Debt, Note, Loan Documents, or other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Debt or any failure of Lender to notify Guarantor of any such action.

2.2    Adjustment. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any Guarantor.

2.3    Condition of Borrower or Guarantor. The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, Guarantor or any other party at any time liable for the payment of all or part of the Guaranteed Debtor any dissolution of Borrower or Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor, or any changes in the shareholders, partners or members of Borrower or Guarantor, or any reorganization of Borrower or Guarantor.

2.4    Invalidity of Guaranteed Debt. The invalidity, illegality or unenforceability of all or any part of the Guaranteed Debt, or any document or agreement executed in connection with the Guaranteed Debt, for any reason whatsoever, including without limitation the fact that (i) the Guaranteed Debt, or any

**GUARANTY**                                                                                                    **Page 4**
4885-4488-0417.1

part thereof, exceeds the amount permitted by law, (ii) the act of creating the Guaranteed Debt or any part thereof is _ultra vires_, (iii) the officers or representatives executing the Note or the other Loan Documents or otherwise creating the Guaranteed Debt acted in excess of their authority, (iv) the Guaranteed Debt violates applicable usury laws, (v) the Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Debt wholly or partially uncollectible from Borrower, (vi) the creation, performance or repayment of the Guaranteed Debt (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Debt or executed in connection with the Guaranteed Debt, or given to secure the repayment of the Guaranteed Debt) is illegal, uncollectible or unenforceable, or (vii) the Note or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other person be found not liable on the Guaranteed Debt, or any part thereof for any reason.

2.5     Release of Obligors.  Any full or partial release of the liability of Borrower on the Guaranteed Debt, or any part thereof, or of any co-guarantors, or any other person or entity now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Debt, or any part thereof, it being recognized, acknowledged and agreed by Guarantor that Guarantor may be required to pay the Guaranteed Debt in full without assistance or support of any other party, and Guarantor has not been induced into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other parties will be liable to pay or perform the Guaranteed Debt, or that Lender will look to other parties to pay or perform the Guaranteed Debt.

2.6     Other Collateral.  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Debt.

2.7     Release of Collateral.  Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security, at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Debt.

2.8     Care and Diligence.  The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (i) to take or prosecute any action for the collection of any of the Guaranteed Debt or (ii) to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (iii) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Debt.

2.9     Unenforceability.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Debt, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectibility or value of any of the collateral for the Guaranteed Debt.

2.10     Offset.  The Note, the Guaranteed Debt and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower against Lender, or any other party, or against payment of the Guaranteed Debt, whether such right of offset, claim or defense arises in connection with the

Guaranteed Debt (or the transaction creating the Guaranteed Debt) or otherwise. Lender shall have the right to offset any deposits of Guarantor with Lender against the Guaranteed Debt.

2.11 _Merger_. The reorganization, merger or consolidation of Borrower into or with any other corporation or entity.

2.12 _Preference_. Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

2.13 _Other Actions Taken or Omitted_. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Debt, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Debt pursuant to the terms hereof, it is the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to pay the Guaranteed Debt when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Debt.

### ARTICLE III.
### REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as follows:

3.1 _Benefit_. Guarantor is an affiliate of Borrower, is the owner of a direct or indirect interest in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Debt.

3.2 _Familiarity and Reliance_. Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of the Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Debt; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

3.3 _No Representation by Lender_. Neither Lender nor any other party has made any representation, warranty or statement to Guarantor in order to induce the Guarantor to execute this Guaranty.

3.4 _Guarantor's Financial Condition_. As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities.

3.5 _Legality_. The execution, delivery and performance by Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any law, statute or regulation whatsoever to which Guarantor is subject or constitute a default (or an event which with notice or lapse of time or both would constitute a default) under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to

which Guarantor is a party or which may be applicable to Guarantor. This Guaranty is a legal and binding obligation of Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

3.6    Survival. All representations and warranties made by Guarantor herein shall survive the execution hereof.

## ARTICLE IV.
## SUBORDINATION OF CERTAIN INDEBTEDNESS

4.1    Subordination of All Guarantor Claims. As used herein, the term "Guarantor Claims" shall mean all debts and liabilities of Borrower to Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether other obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the person or persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantor. The Guarantor Claims shall include without limitation all rights and claims of Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or a portion of the Guaranteed Debt. Upon the occurrence of an event of default under the Loan Documents or the occurrence of an event which would, with the giving of notice or the passage of time, or both, constitute an event of default, Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other party any amount upon the Guarantor Claims.

4.2    Claims in Bankruptcy. In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims. Guarantor hereby assigns such dividends and payments to Lender. Should Lender receive, for application upon the Guaranteed Debt, any such dividend or payment which is otherwise payable to Guarantor, and which, as between Borrower and Guarantor, shall constitute a credit upon the Guarantor Claims, then upon payment to Lender in full of the Guaranteed Debt, Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Debt, and such subrogation shall be with respect to that proportion of the Guaranteed Debt which would have been unpaid if Lender had not received dividends or payments upon the Guarantor Claims.

4.3    Payments Held in Trust. In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payment, claim or distribution which is prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

4.4    Liens Subordinate. Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Debt, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, Guarantor shall not (i) exercise or enforce any creditor's

right it may have against Borrower, or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interest, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

## ARTICLE V.
## MISCELLANEOUS

5.1    Waiver.  No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right.  The rights of Lender hereunder shall be in addition to all other rights provided by law.  No modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved.  No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

5.2    Notices.  All notices or other communications required or permitted to be given pursuant to this Guaranty shall be in writing and shall be considered as properly given if (i) mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested, (ii) by delivering same in person to the intended addressee, (iii) by delivery to an independent third party commercial delivery service for same day or next day delivery and providing for evidence of receipt at the office of the intended addressee, or (iv) by prepaid telegram, telex, or facsimile to the addressee.  Notice so mailed shall be effective upon its deposit with the United States Postal Service or any successor thereto; notice sent by such a commercial delivery service shall be effective upon delivery to such commercial delivery service; notice given by personal delivery shall be effective only if and when received by the addressee; and notice given by other means shall be effective only if and when received at the office or designated place or machine of the intended addressee.  For purposes of notice, the addresses of the parties shall be as set forth below; provided, however, that either party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving of thirty (30) days' notice to the other party in the manner set forth herein.

|  |  |
|---|---|
| **If to Lender:** | **WILDCAT LENDING FUND ONE, LP**<br>**4800 Dexter Dr.**<br>**Plano, Texas  75093** |
| **If to Guarantor:** | **Joshua L. Patterson**<br>**1910 Crestridge Dr.**<br>**Arlington, TX 76013** |

5.3    Governing Law.  This Guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Collin County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.  Any action or proceeding against Guarantor under or in connection with this Guaranty may be brought in any state or federal court in Collin County, Texas.  Guarantor hereby irrevocably (i) submits to the nonexclusive jurisdiction of such courts, and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum.  Guarantor agrees that service of process upon it may be made by certified or registered mail, return receipt requested, at its address specified herein.  Nothing herein shall affect the right of Lender to serve process in any other matter permitted by law or shall limit the right of Lender to bring any action or proceeding against

Guarantor or with respect to any of Guarantor's property in courts in other jurisdictions. Any action or proceeding by Guarantor against Lender shall be brought only in a court located in Collin County, Texas.

5.4    Invalid Provisions. If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

5.5    Amendments. This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

5.6    Parties Bound; Assignment. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that Guarantor may not, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder.

5.7    Headings. Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

5.8    Recitals. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

5.9    Rights and Remedies. If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

EXECUTED as of the day and year first above written.

GUARANTOR:

Joshua L. Patterson

# GUARANTY

This **GUARANTY** ("Guaranty") is executed effective as of **May 23, 2022**, by **Alan Villalobos** ("Guarantor"), for the benefit of **WILDCAT LENDING FUND ONE, LP** ("Lender").

## W I T N E S S E T H:

**WHEREAS, Rolltide Realty, LLC, a Texas limited liability company** ("Borrower"), has executed that certain Real Estate Lien Note, dated of even date herewith, payable to the order of the Lender, in the original stated principal amount of **$139,500.00** (together with all renewals, modifications, increases and extensions thereof, the "Note") under which Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a loan ("Loan") which is secured by the liens and security interests of a Deed of Trust of even date herewith, and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan (collectively the "Loan Documents"); and

**WHEREAS,** Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment to Lender of the Guaranteed Debt (as herein defined); and

**WHEREAS,** Guarantor is the owner of a direct or indirect interest in Borrower, and Guarantor will directly benefit from Lender's making the Loan to Borrower.

**NOW, THEREFORE,** as an inducement to Lender to enter into the Loan Documents and to make the Loan to Borrower as described therein, and to extend such additional credit as Lender may from time to time agree to extend, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

## ARTICLE I.
## NATURE AND SCOPE OF GUARANTY

1.1    Guaranty of Obligation.  Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Debt (as herein described) as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity, or otherwise.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Debt as a primary obligor.

1.2    Definition of Guaranteed Debt.  As used herein, the term "Guaranteed Debt" means all of the following:

A.    All principal, interest, attorneys' fees, commitment fees, liabilities for costs and expenses and other indebtedness, obligations and liabilities of Borrower to Lender at any time created or arising in connection with the Loan, or any amendment thereto or substitution therefor, including but not limited to all indebtedness, obligations and liabilities of Borrower to Lender arising under the Note, or under any renewals, modifications, increases and extensions of the Note, or under the Loan Documents;

B.    All liabilities of Borrower for future advances, extensions of credit, sales on account or other value at any time given or made by Lender to Borrower arising under the Loan Documents, whether or not the advances, credit or value are given pursuant to commitment;

1028 E. Bowie St., Ft. Worth, TX 76104
**GUARANTY - TX**                                                                                          **Page 1**
4861-2902-6849.1

C.    Any and all other indebtedness, liabilities, obligations and duties of every kind and character of Borrower to Lender, whether now or hereafter existing or arising, regardless of whether such present or future indebtedness, liabilities, obligations or duties are direct or indirect, related or unrelated, liquidated or unliquidated, primary or secondary, joint, several, or joint and several, or fixed or contingent;

D.    Any and all post-petition interest and expenses (including attorneys' fees) whether or not allowed under any bankruptcy, insolvency, or other similar law; and

E.    All costs, expenses and fees, including but not limited to court costs and attorneys' fees, arising in connection with the collection of any or all amounts, indebtedness, obligations and liabilities of Borrower to Lender described in items (A) through (D) of this Section.

1.3    <u>Nature of Guaranty</u>. This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Debt arising or created after any attempted revocation by Guarantor and after (if Guarantor is a natural person) Guarantor's death (in which event this Guaranty shall be binding upon Guarantor's estate and Guarantor's legal representatives and heirs). The fact that at any time or from time to time the Guaranteed Debt may be increased, reduced or paid in full shall not release, discharge or reduce the obligation of Guarantor to Lender with respect to indebtedness or obligations of Borrower thereafter incurred (or other Guaranteed Debt thereafter arising) under the Note or otherwise. This Guaranty may be enforced by Lender and any subsequent holder of the Guaranteed Debt and shall not be discharged by the assignment or negotiation of all or part of the Guaranteed Debt.

1.4    <u>Guaranteed Debt Not Reduced by Offset</u>. The Guaranteed Debt and the liabilities and obligations of Guarantor to Lender hereunder shall not be reduced, discharged or released because of or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Debt, whether such offset, claim or defense arises in connection with the Guaranteed Debt (or the transactions creating the Guaranteed Debt) or otherwise. Without limiting the foregoing or the Guarantor's liability hereunder, to the extent that Lender advances funds or extends credit to Borrower, and does not receive payments or benefits thereon in the amounts and at the times required or provided by applicable agreements or laws, Guarantor is absolutely liable to make such payments to (and confer such benefits on) Lender, on a timely basis.

1.5    <u>Payment by Guarantor</u>. If all or any part of the Guaranteed Debt shall not be punctually paid when due, whether at maturity or earlier by acceleration or otherwise, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Debt to Lender at Lender's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Debt, and may be made from time to time with respect to the same or different items of Guaranteed Debt. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

1.6    <u>No Duty to Pursue Others</u>. It shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce such payment by Guarantor, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Guaranteed Debt or any other person, (ii) enforce Lender's rights against any collateral which shall ever

have been given to secure the Guaranteed Debt, (iii) enforce Lender's rights against any other guarantors of the Guaranteed Debt, (iv) join Borrower or any others liable on the Guaranteed Debt in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Guaranteed Debt, or (vi) resort to any other means of obtaining payment of the Guaranteed Debt. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Debt.

1.7    Waivers. Guarantor agrees to the provisions of the Loan Documents, and hereby waives notice of (i) any loans or advances made by Lender to Borrower, (ii) acceptance of this Guaranty, (iii) any amendment or extension of the Note or of any other Loan Documents, (iv) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Property securing the Loan, (v) the occurrence of any breach by Borrower or event of default under the Loan Documents, (vi) Lender's transfer or disposition of the Guaranteed Debt, or any part thereof, (vii) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Debt, (viii) protest, proof of nonpayment or default by Borrower, or (ix) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Debt and the obligations hereby guaranteed. The parties intend that Guarantor shall not be considered a "debtor" as defined in Tex. Bus. & Com. Code Ann. §9.105, as amended (and any successor statute thereto).

1.8    Payment of Expenses. In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder. The covenant contained in this Section shall survive the payment of the Guaranteed Debt.

1.9    Effect of Bankruptcy. In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Debt, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect, and this Guaranty shall remain in full force and effect. It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

1.10    Waiver of Subrogation, Reimbursement and Contribution. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating the Guarantor to the rights of Lender) to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Debt for any payment made by Guarantor under or in connection with this Guaranty or otherwise.

1.11    Waivers and Related Agreements. Guarantor hereby expressly waives: (i) any right to revoke this Guaranty with respect to the Guaranteed Debt; (ii) any right to require Lender to do any of the following before Guarantor is obligated to pay or perform the Guaranteed Obligations or before Lender may proceed against Guarantor: (A) sue or exhaust remedies against Borrower or any other person liable for the Guaranteed Debt or any portion thereof; (B) sue on an accrued right of action in respect of any of the Guaranteed Debt or bring any other action, exercise any other right, or exhaust any other remedy; or (C) enforce rights against Borrower's assets or the collateral pledged by Borrower to secure the

**GUARANTY**
4861-2902-6849.1

Page 3

Guaranteed Debt; (iii) any right relating to the timing, manner or conduct of Lender's enforcement of rights against Borrower's assets or the collateral pledged by Borrower to secure the Guaranteed Debt; (iv) if Guarantor and Borrower (or any other Person) have each pledged assets to secure the Guaranteed Debt, any right to require Lender to proceed first against collateral pledged by Borrower (or any other person) before proceeding against the collateral pledged by Guarantor; (v) promptness, diligence, notice of any default, notice of nonpayment or nonperformance, notice of acceleration or intent to accelerate, demand for payment or performance, acceptance or notice of acceptance of this Guaranty, presentment, notice of protest, notice of dishonor, notice of the incurring by Borrower of additional indebtedness, notice of any suit or other action by Lender against Borrower or any other Person, any notice to any person liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Debt and this Guaranty; (vi) each of the foregoing rights or defenses, regardless of whether they arise under (A) Rule 31 of the Texas Rules of Civil Procedure, (B) Chapter 17, Section 17.001 of the Texas Civil Practice and Remedies Code, (C) Chapter 43 of the Texas Civil Practice and Remedies Code, or (D) any other statute or law, common law, in equity, under contract or otherwise, or under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law; and (vii) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, and under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law.

1.12    Borrower.    The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

### ARTICLE II.
### EVENTS AND CIRCUMSTANCES NOT REDUCING
### OR DISCHARGING GUARANTOR'S OBLIGATIONS

Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which Guarantor might otherwise have as a result of or in connection with any of the following:

2.1    Modifications.    Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Debt, Note, Loan Documents, or other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Debt or any failure of Lender to notify Guarantor of any such action.

2.2    Adjustment.    Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any Guarantor.

2.3    Condition of Borrower or Guarantor.    The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, Guarantor or any other party at any time liable for the payment of all or part of the Guaranteed Debtor any dissolution of Borrower or Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor, or any changes in the shareholders, partners or members of Borrower or Guarantor, or any reorganization of Borrower or Guarantor.

2.4    Invalidity of Guaranteed Debt.    The invalidity, illegality or unenforceability of all or any part of the Guaranteed Debt, or any document or agreement executed in connection with the Guaranteed

Debt, for any reason whatsoever, including without limitation the fact that (i) the Guaranteed Debt, or any part thereof, exceeds the amount permitted by law, (ii) the act of creating the Guaranteed Debt or any part thereof is ultra vires, (iii) the officers or representatives executing the Note or the other Loan Documents or otherwise creating the Guaranteed Debt acted in excess of their authority, (iv) the Guaranteed Debt violates applicable usury laws, (v) the Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Debt wholly or partially uncollectible from Borrower, (vi) the creation, performance or repayment of the Guaranteed Debt (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Debt or executed in connection with the Guaranteed Debt, or given to secure the repayment of the Guaranteed Debt) is illegal, uncollectible or unenforceable, or (vii) the Note or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other person be found not liable on the Guaranteed Debt, or any part thereof for any reason.

2.5    Release of Obligors.  Any full or partial release of the liability of Borrower on the Guaranteed Debt, or any part thereof, or of any co-guarantors, or any other person or entity now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Debt, or any part thereof; it being recognized, acknowledged and agreed by Guarantor that Guarantor may be required to pay the Guaranteed Debt in full without assistance or support of any other party, and Guarantor has not been induced into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other parties will be liable to pay or perform the Guaranteed Debt, or that Lender will look to other parties to pay or perform the Guaranteed Debt.

2.6    Other Collateral.  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Debt.

2.7    Release of Collateral.  Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security, at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Debt.

2.8    Care and Diligence.  The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (i) to take or prosecute any action for the collection of any of the Guaranteed Debt or (ii) to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (iii) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Debt.

2.9    Unenforceability.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Debt, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectibility or value of any of the collateral for the Guaranteed Debt.

2.10    Offset.  The Note, the Guaranteed Debt and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower against Lender, or any other party, or against payment of the Guaranteed Debt, whether such right of offset, claim or defense arises in connection with the

Guaranteed Debt (or the transaction creating the Guaranteed Debt) or otherwise. Lender shall have the right to offset any deposits of Guarantor with Lender against the Guaranteed Debt.

2.11    Merger. The reorganization, merger or consolidation of Borrower into or with any other corporation or entity.

2.12    Preference. Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

2.13    Other Actions Taken or Omitted. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Debt, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Debt pursuant to the terms hereof, it is the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to pay the Guaranteed Debt when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Debt.

## ARTICLE III.
## REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as follows:

3.1    Benefit. Guarantor is an affiliate of Borrower, is the owner of a direct or indirect interest in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Debt.

3.2    Familiarity and Reliance. Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of the Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Debt; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

3.3    No Representation by Lender. Neither Lender nor any other party has made any representation, warranty or statement to Guarantor in order to induce the Guarantor to execute this Guaranty.

3.4    Guarantor's Financial Condition. As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities.

3.5    Legality. The execution, delivery and performance by Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any law, statute or regulation whatsoever to which Guarantor is subject or constitute a default (or an event which with notice or lapse of time or both would constitute a default) under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to

which Guarantor is a party or which may be applicable to Guarantor. This Guaranty is a legal and binding obligation of Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

3.6    Survival. All representations and warranties made by Guarantor herein shall survive the execution hereof.

## ARTICLE IV.
## SUBORDINATION OF CERTAIN INDEBTEDNESS

4.1    Subordination of All Guarantor Claims. As used herein, the term "Guarantor Claims" shall mean all debts and liabilities of Borrower to Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether other obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the person or persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantor. The Guarantor Claims shall include without limitation all rights and claims of Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or a portion of the Guaranteed Debt. Upon the occurrence of an event of default under the Loan Documents or the occurrence of an event which would, with the giving of notice or the passage of time, or both, constitute an event of default, Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other party any amount upon the Guarantor Claims.

4.2    Claims in Bankruptcy. In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims. Guarantor hereby assigns such dividends and payments to Lender. Should Lender receive, for application upon the Guaranteed Debt, any such dividend or payment which is otherwise payable to Guarantor, and which, as between Borrower and Guarantor, shall constitute a credit upon the Guarantor Claims, then upon payment to Lender in full of the Guaranteed Debt, Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Debt, and such subrogation shall be with respect to that proportion of the Guaranteed Debt which would have been unpaid if Lender had not received dividends or payments upon the Guarantor Claims.

4.3    Payments Held in Trust. In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payment, claim or distribution which is prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

4.4    Liens Subordinate. Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Debt, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, Guarantor shall not (i) exercise or enforce any creditor's

right it may have against Borrower, or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interest, collateral fights, judgments or other encumbrances on assets of Borrower held by Guarantor.

## ARTICLE V.
## MISCELLANEOUS

5.1    Waiver. No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. No modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

5.2    Notices. All notices or other communications required or permitted to be given pursuant to this Guaranty shall be in writing and shall be considered as properly given if (i) mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested, (ii) by delivering same in person to the intended addressee, (iii) by delivery to an independent third party commercial delivery service for same day or next day delivery and providing for evidence of receipt at the office of the intended addressee, or (iv) by prepaid telegram, telex, or facsimile to the addressee. Notice so mailed shall be effective upon its deposit with the United States Postal Service or any successor thereto; notice sent by such a commercial delivery service shall be effective upon delivery to such commercial delivery service; notice given by personal delivery shall be effective only if and when received by the addressee; and notice given by other means shall be effective only if and when received at the office or designated place or machine of the intended addressee. For purposes of notice, the addresses of the parties shall be as set forth below; provided, however, that either party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving of thirty (30) days' notice to the other party in the manner set forth herein.

If to Lender:          **WILDCAT LENDING FUND ONE, LP**
                       **4800 Dexter Dr.**
                       **Plano, Texas  75093**

If to Guarantor:       **Alan Villalobos**
                       **1316 Norman Street**
                       **Fort Worth, TX 76106**

5.3    Governing Law. This Guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Collin County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas. Any action or proceeding against Guarantor under or in connection with this Guaranty may be brought in any state or federal court in Collin County, Texas. Guarantor hereby irrevocably (i) submits to the nonexclusive jurisdiction of such courts, and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum. Guarantor agrees that service of process upon it may be made by certified or registered mail, return receipt requested, at its address specified herein. Nothing herein shall affect the right of Lender to serve process in any other matter permitted by law or shall limit the right of Lender to bring any action or proceeding against

**GUARANTY**                                                                  Page 8
4861-2902-6849.1

Guarantor or with respect to any of Guarantor's property in courts in other jurisdictions. Any action or proceeding by Guarantor against Lender shall be brought only in a court located in Collin County, Texas.

5.4    Invalid Provisions.  If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

5.5    Amendments.  This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

5.6    Parties Bound; Assignment.  This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that Guarantor may not, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder.

5.7    Headings.  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

5.8    Recitals.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

5.9    Rights and Remedies.  If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

**EXECUTED** as of the day and year first above written.

GUARANTOR:

_Alan Villalobos_

**Alan Villalobos**

# Form W-9

(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

**Give Form to the requester. Do not send it to the IRS.**

Name (as shown on your income tax return)

**Joshua L. Patterson**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

[X] Individual/sole proprietor [ ] C Corporation [ ] S Corporation [ ] Partnership [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ ----------------------

[ ] Other (see instructions) ▶

[ ] Exempt payee

Address (number, street, and apt. or suite no.)

**1910 Crestridge Drive**

City, state, and ZIP code

**Arlington, TX 76013**

Requester's name and address (optional)

**Wildcat Lending Fund One, LP**
**4800 Dexter Dr.**
**Plano, Texas 75093**

List account number(s) here (optional)

*Print or type
See Specific Instructions on page 2.*

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

**Employer identification number**

| | | | – | | | | | |
|---|---|---|---|---|---|---|---|---|

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here** | Signature of U.S. person ▶ *Joshua L. Patterson* | Date ▶ 5/23/2022

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)

| Form **W-9**<br>(Rev. December 2011)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |
|---|---|---|

Name (as shown on your income tax return)

**Alan Villalobos**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

[X] Individual/sole proprietor  [ ] C Corporation  [ ] S Corporation  [ ] Partnership  [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

[ ] Other (see instructions) ▶

[ ] Exempt payee

Address (number, street, and apt. or suite no.)

**1316 Norman Street**

City, state, and ZIP code

**Fort Worth, TX 76106**

List account number(s) here (optional)

Requester's name and address (optional)

**Wildcat Lending Fund One, LP**
**4800 Dexter Dr.**
**Plano, Texas 75093**

*Print or type*
*See Specific Instructions on page 2.*

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

| Sign<br>Here | Signature of<br>U.S. person ▶ *Alan Villalobos* | Date ▶ 05/23/2022 |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

- The U.S. owner of a disregarded entity and not the entity,

- The U.S. grantor or other owner of a grantor trust and not the trust, and

- The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income will be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner, the domestic owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, you must complete an appropriate Form W-8.

**Note.** Check the appropriate box for the federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the tax classification in the space provided. If you are an LLC that is treated as a partnership for federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/ disregarded entity name" line.

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the "Business name/ disregarded entity name," sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 5 and 7 through 13. Also, C corporations. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, below, and items 4 and 5 on page 4 indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see *Exempt Payee* on page 3.

**Signature requirements.** Complete the certification as indicated in items 1 through 3, below, and items 4 and 5 on page 4.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

Form W-9 (Rev. 12-2011)

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

# INVOICE

FROM:

John Kirchen
6610 Robin Rd

Dallas, TX 75209

Telephone Number: 214 769 7769    Fax Number:

| INVOICE NUMBER |
|---|
| 1028 E Bowie |
| **DATE** |
| 5/20/2022 |

TO:

Wildcat Lending Fund One, LP
4800 Dexter Drive
Plano, TX 75002

Telephone Number: (972) 525-4777    Fax Number:
Alternate Number:    E-Mail: Info@wildcatlending.com

| REFERENCE | |
|---|---|
| Internal Order #: | 1028 E Bowie |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 1028 E Bowie |
| Other File # on form: | 1028 E Bowie |
| Federal Tax ID: | |
| Employee ID: | |

## DESCRIPTION

Lender: Wildcat Lending Fund One, LP                Client: Wildcat Lending Fund One, LP
Purchaser/Borrower: Joshua L Patterson
Property Address: 1028 E Bowie St
City: Fort Worth
County: Tarrant        State: TX        Zip: 76104
Legal Description: Morningside Terrace Addition Block 1 Lot 7

| FEES | AMOUNT |
|---|---|
| Full Appraisal | 400.00 |
| | |
| SUBTOTAL | 400.00 |

| PAYMENTS | AMOUNT |
|---|---|
| Check #:    Date:    Description: | |
| Check #:    Date:    Description: | |
| Check #:    Date:    Description: | |
| SUBTOTAL | |
| TOTAL DUE | $    400.00 |

**WCL Insurance Services LLC**
4800 Dexter Dr
Plano, TX  75093
972-777-5315
insurance@wclinsurance.com
www.wclinsurance.com

# Invoice

W**CL** INSURANCE
S E R V I C E S

BILL TO
Alan Villalobos
Rolltide Realty LLC
1910 Crestridge Drive
Arlington, TX  76013

| DATE | PLEASE PAY |
|------|------------|
| 05/20/2022 | **$834.00** |

| LOCATION | AMOUNT |
|----------|--------|
| 1028 E. Bowie Street, Fort Worth TX 76104 | 834.00 |

Property/Builders Risk & Liability Coverage- Vacant Six- Month
Policy Term
Coverage Amount: $192,000
Fully Earned Premium
Non Refundable
US Assure

| TOTAL DUE | **$834.00** |
|-----------|-------------|

THANK YOU.

Please make check payable to:
WCL Insurance Services LLC - 4800 Dexter Dr Plano TX 75093

## Exhibit B

**Deed of Trust**

D222133633   05/24/2022 02:11 PM   Page: 1 of 10   Fee: $55.00   Submitter: BNT of Texas, LLC
Electronically Recorded by Tarrant County Clerk in Official Public Records   Entered 05/23/23 16:20:17   Desc Main
Document      Page 89 of 117   MARY LOUISE NICHOLSON
COUNTY CLERK

AFTER RECORDING PLEASE RETURN TO:
WILDCAT LENDING FUND ONE, LP
4800 Dexter Dr.
Plano, Texas 75093

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF TARRANT | § | |

THAT **Rolltide Realty, LLC, a Texas limited liability company**, whose mailing address is **1910 Crestridge Dr., Arlington, TX 76013**, being the Debtor(s) and hereinafter called "Grantors" (whether one or more), in consideration of TEN AND NO/100 DOLLARS ($10.00), in hand paid, and the debt and trust hereinafter mentioned, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto Michael E. Gillman, Trustee, hereinafter called the "Trustee" (whether one or more), and to his successors in trust, the following described land and other property situated in the County of Tarrant, State of Texas, to-wit:

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

together with all heating, plumbing, refrigeration, lighting fixtures, equipment and/or appliances now or hereafter attached thereto or used in connection therewith, and all buildings and improvements thereon and hereafter placed thereon; appurtenances, servitudes, rights, ways, privileges, and advantages thereunto belonging or in anywise appertaining, hereinafter called the "Mortgaged Premises".

TO HAVE AND TO HOLD the Mortgaged Premises unto the Trustee forever, Grantors hereby bind themselves to warrant and forever defend the title to the Mortgaged Premises, or any part thereof, unto the Trustee against all persons whomsoever claiming or to claim the same or any part thereof.

1.      This conveyance is made in trust, however, to secure payment of a debt in the principal sum of **$139,500.00**, evidenced by a Promissory Note of even date herewith, hereinafter called the "Note", the terms of which are incorporated herein by reference, executed by Grantors, payable to the order of WILDCAT LENDING FUND ONE, LP, being the Secured Party(ies), and hereinafter called the "Noteholder" (whether one or more) at 4800 Dexter Dr., Plano, Texas 75093, which is the Noteholder's address, or at such other place as the Noteholder may from time to time designate in writing, with interest and in installments as stipulated and provided therein and finally maturing on **November 23, 2022**.

2.      This Conveyance is made in trust to further secure payment of all other amounts with interest thereon becoming due and payable to the Noteholder under the terms of the Note or this Deed of Trust, including (but not limited to) any extension, renewal or re-amortization of said Debt, any increase or addition thereto and any current or future debt owing by Grantors to the Noteholder, of any kind or character, whether evidenced by note,

1028 E. Bowie St., Ft. Worth, TX 76104

**DEED OF TRUST - TX**
4860-6185-2449.1

Page 1

guaranty, open account or otherwise, the payment thereof being secured or intended to be secured hereby; and to further secure performance and discharge of each and every promise, obligation, covenant and agreement of Grantors contained in the Note, this Deed of Trust or any other instrument executed by Grantors, pertaining to said debt or the security thereof, and any and all other costs and expenses incurred by Noteholder in connection with the loan evidenced by the Note, all at which shall be indebtedness due by Grantors to Noteholder hereunder and under the Note.

3. As additional security for the payment of said debt, Grantors hereby transfer and assign unto the Noteholder:

a. All judgments, awards of damages and settlements hereinafter made resulting from condemnation proceedings or the taking of all or any part of the Mortgaged Premises under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Premises or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets. The Noteholder is hereby authorized, but shall not be required, on behalf and in the name of Grantors, to execute and deliver acquittances for, and to appeal from, any such judgments or awards. The Noteholder may apply all such sums or any part thereof so received, after the payment of all expenses, including costs and attorney's fees, on the debt in such manner as the Noteholder elects;

b. All bonuses, rents and royalties accrued or to accrue under all oil, gas or mineral leases, now existing or which may hereafter come into existence. Grantors direct payment of the same to the Noteholder, at the option of the Noteholder and upon written demand of the Noteholder therefor, to be applied to the debt until paid, whether due or not, and either before or after any default under the terms of this Deed of Trust or the Note.

c. All rents, issues and profits of the Mortgaged Premises, including, but not limited to, all unsevered crops, or Grantors' interest therein. Grantors direct payment of the same to the Noteholder to be applied to the debt until paid, whether due or not. This assignment shall become operative upon any default of Grantors under the terms of this Deed of Trust or the Note and shall remain in full force and effect so long as any default continues in the matter of making any of the payments or the performance of any of the covenants set forth in this Deed of Trust or the Note.

d. All contract rights in and to the Mortgaged Premises, including, but not limited to, contracts for the sale of the Mortgaged Premises, and contracts relating to construction thereon.

4. The proceeds of the Note to the extent that the same are utilized to take up any outstanding liens against the Mortgaged Premises, or any portion thereof, have been advanced by the Noteholder at Grantors' request and upon Grantors' representation that such amounts are due and are secured by valid liens against the Mortgaged Premises. The Noteholder shall be subrogated to any and all rights, superior titles, liens, and equities owned or claimed by any owner or holder of any outstanding liens and debts, however remote, regardless of whether said liens or debts are acquired by the Noteholder by assignment or are released by the holder thereof upon payment.

5. Grantors further covenant and agree:

a. That Grantors will pay the principal of and interest on the Note in accordance with the terms thereof. That Grantors are seized of the Mortgaged Premises and are entitled to convey the same; that Grantors will make such further assurance of title as may be necessary to fully confirm to the Trustee the title to the Mortgaged Premises.

b. That all awnings, door and window screens, storm window screens, storm windows and doors, mantels, cabinets, rugs, carpeting, linoleum, wall and in-a-door beds, stoves, shades, blinds, oil and other fuel-burning systems and equipment, water heaters, radiator covers, and all plumbing, heating, lighting, cooking, ventilating, cooling, air-conditioning and refrigerating apparatus and equipment, and such goods and chattels and personal property as are ever furnished by landlords in letting or operating an unfurnished building, or which are or shall be attached to said building by nails, screws, bolts, pipe connections, masonry or in other manner, and all additions thereto and replacements thereof, and such built-in equipment as shown by plans and specifications, are and shall be deemed to be fixtures and accessions to the Mortgaged Premises being hereby agreed to be immovables

**DEED OF TRUST** Page 2
4860-6185-2449.1

and a part of the realty as between the parties hereto, and shall be deemed to be a part and portion of the Mortgaged Premises.

c. That Grantors will pay (prior to delinquency) all taxes and assessments levied or assessed upon the Mortgaged Premises, or the interest created therein by this Deed of Trust, and exhibit the receipts therefor to the Noteholder (unless such payments are made by the Noteholder, as hereinafter provided), and will defend the title and possession of the Mortgaged Premises to the end that this Deed of Trust shall be and remain a first lien on the Mortgaged Premises until the debt is paid. That Grantors will pay all attorneys' fees and expenses which may be incurred by the Noteholder in enforcing the terms of the Note and this Deed of Trust or in any suit which the Noteholder may become a party where this Deed of Trust or the Mortgaged Premises is in any manner involved, and all expenses incurred in presenting a claim against the estate of a decedent or a bankrupt. The word "assessments" as used in this Deed of Trust, whether in this paragraph or elsewhere, shall include not only assessments by political subdivisions, but also maintenance charges, regular assessments and special assessments assessed by subdivision restrictions, homeowner's declarations for planned unit developments and assessments by condominium agreements, if any.

d. That Grantors will keep all insurable Mortgaged Premises insured for the protection of the Noteholder against loss by fire, hazards included within the term "extended coverage" and such other hazards as Noteholder may require in such manner, in such amounts, and in such companies as the Noteholder may approve, and keep the policies therefor, properly endorsed, on deposit with the Noteholder. If renewal policies are not delivered to the Noteholder 30 days before the expiration of the existing policy or policies, with evidence of premiums paid, the Noteholder may, but is not obligated to, obtain the required insurance on behalf of Grantors (or insurance in favor of the Noteholder alone) and pay the premiums thereon and Grantors shall be liable to Noteholder for (i) the cost of all such premiums paid for Noteholder, plus (ii) an administrative fee each such instance for Noteholder's placing of such insurance equal to (i) $200.00 for the first month, and (ii) $100.00 for each successive month thereafter. Grantors assign to Noteholder all right and interest in all such policies of insurance and authorize the Noteholder to collect for, adjust or compromise any losses under any insurance policy on the Mortgaged Premises, and loss proceeds (less expense of collection) shall, at the Noteholder's option, be applied on the debt, whether due or not, or to the restoration of the Mortgaged Premises, or be released to Grantors, but such application or release shall not cure or waive any default.

e. That, when requested by the Noteholder, Grantors will pay with and in addition to the monthly payments of principal and interest payable under the terms of the Note, on the same day as the principal and interest installments are due and payable, a sum equal to one-twelfth of the estimated annual ground rents, taxes, hazard insurance premiums, and assessments, if any, next due on the Mortgaged Premises. If the amount so paid is not sufficient to pay such ground rents, taxes, hazard insurance premiums and assessments when due, then Grantors will deposit immediately with the Noteholder an amount sufficient to pay such ground rents, taxes, hazard insurance premiums and assessments. If there is a default under any of the provisions of this Deed of Trust resulting in a sale of the Mortgaged Premises or foreclosure, or if the Noteholder acquires the Mortgaged Premises otherwise after default, the Noteholder shall apply, at the time of commencement of such proceedings or at the time the property is otherwise acquired, the balance then remaining of the funds accumulated under this provision as a credit against the amount then remaining unpaid under the Note. No interest shall accrue or be allowed on any payments made under the provisions of this paragraph. If the amount so paid is in excess of the amount needed to pay such ground rents, taxes, hazard insurance premiums, and assessments in any calendar year, such excess shall be applied to the next maturing installments of principal and interest. All deposits made pursuant to this paragraph shall be held by the Noteholder as additional security for the payment of the debt described herein and shall not be assigned, attached or otherwise alienated except when transferred by Grantors to a new owner of the Mortgaged Premises concurrently with a bona fide sale of the Mortgaged Premises.

f. That Grantors will not commit or permit any waste on the Mortgaged Premises and will keep the buildings, fences and all other improvements now or hereafter erected on the Mortgaged Premises in sound condition and in good repair and will neither do nor permit to be done anything to the Mortgaged Premises that may impair the value thereof and the Noteholder shall have the right of entry upon the Mortgaged Premises at all reasonable times for the purpose of inspecting the same.

**DEED OF TRUST**
4860-6185-2449.1

Page 3

6.    The Noteholder, without notice, may take possession of the Mortgaged Premises upon default of Grantors, under the terms of this Deed of Trust or the Note, rent the same for the account of Grantors, deduct from the rents all expenses and apply the remainder to the debt.

7.    In the event the ownership of the Mortgaged Premises, or any part thereof, becomes vested in a person other than Grantors, the Noteholder may, without notice to Grantors, deal with such successor or successors in interest with reference to this Deed of Trust and to said debt in the same manner as with Grantors without in any way vitiating or discharging Grantors' liability hereunder or upon the debt. No sale of the Mortgaged Premises and no forbearance on the part of the Noteholder and no extension of the time for the payment of the debt hereby secured, given by the Noteholder, shall operate to release, modify, change, or affect the original liability of Grantors, either in whole or in part.

8.    The Noteholder, without notice, may release any part of the Mortgaged Premises, or any person liable for the debt, without in any way affecting the lien hereof upon any part of the Mortgaged Premises not expressly released or the liability of any person not expressly released, and may agree with any party obligated on the debt, or having any interest in the Mortgaged Premises, to extend the time for payment of any part or all of the debt. Such agreement shall not in any way release or impair the lien hereof, but shall extend the lien hereof as against the title of all parties having any interest in the Mortgaged Premises which interest is subject to this Deed of Trust.

9.    Grantors waive the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Mortgaged Premises, commonly known as Appraisement Laws, and (ii) the benefit of all laws that may be hereafter enacted in any way extending the time for the enforcement of the collection of said debt or creating or extending a period of redemption from any sale made in collecting said debt, commonly known as Stay Laws and Redemption Laws, and Grantors hereby agree and contract that the laws of the State of Texas, save as above excepted, now in force relative to the collection of said debt and the application to the payment thereof, are expressly adopted and made a part hereof.

10.    The Noteholder may, at the Noteholder's option, without demand or notice and without waiver of any right, pay or discharge any lien or claim upon the Mortgaged Premises or pay any delinquent tax or assessment and upon such payment the Noteholder shall be subrogated respectively to the rights of the holder of such lien or claim or to the rights of the taxing authority; the Noteholder may advance any unpaid insurance premiums, and whenever Grantors have failed properly to maintain the improvements, the Noteholder may make repairs necessary for the proper preservation of the security. Grantors agree to pay to the Noteholder, upon demand, any and all disbursements made under the provisions of this Deed of Trust together with interest thereon at the rate which the principal of the Note shall bear after default from the respective dates of such disbursements, and all such disbursements shall become a part of the debt, payable at the same place specified in the Note, and shall be secured by this Deed of Trust.

11.    Acceptance by the Noteholder of any payment in an amount less than the amount then due on said debt shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be a default. At any time thereafter, and until the entire amount then due on said debt has been paid, the Noteholder shall be entitled to exercise all rights conferred upon it in this instrument upon the occurrence of a default.

12.    If Grantors make an assignment for the benefit of creditors, or if a receiver is appointed for any part of the Mortgaged Premises, or if Grantors are adjudicated a bankrupt, or if Grantors institute any proceeding under the Federal Bankruptcy Laws of the United States, or similar Laws of any State in which Grantors are domiciled, then on the happening of any one of these events, the whole of said debt shall immediately become due and payable at the option of the Noteholder, and the Noteholder may proceed with foreclosure as herein provided.

13.    If Grantors shall well and truly pay, or cause to be paid, the Note, and other debt that may be owing, and do keep and perform each and every covenant, condition, and stipulation herein and in the Note contained, then these presents shall become null and void; otherwise to be and remain in full force and effect. If there is a default in any payment, or part thereof, under the Note, or any other current or future indebtedness of Grantors to Noteholder of any kind or nature, or if Grantors shall fail to keep or perform any of the covenants,

**DEED OF TRUST**
4860-6185-2449.1

Page 4

conditions or stipulations herein, or in the Note, then the Note, together with all other sums secured hereby shall, at the option of the Noteholder, become at once due and payable without demand or notice other than that demand or notice provided for in this paragraph, and the Trustee when requested so to do by the Noteholder after such default, shall sell the Mortgaged Premises at public auction to the highest bidder for cash, between the hours of ten o'clock A.M. and four o'clock P.M., at the time specified on the notice, on the first Tuesday in any month or such other date in accordance with Chapter 51 of the Texas Property Code, at the designated area of the County Courthouse, as designated by the commissioners' court in the County in which the Mortgaged Premises, or any part thereof, are situated, after advertising the time, place and terms of said sale and the Mortgaged Premises to be sold by posting, or causing to be posted, at least twenty-one (21) consecutive days prior to the date of said sale, written or printed notice thereof at the Courthouse door in each of the Counties in which the Mortgaged Premises are situated (such notice shall designate the County where the Mortgaged Premises will be sold), or otherwise in accordance with Chapter 51 of the Texas Property Code. In addition, at least twenty-one (21) days preceding the date of the sale written notice of the proposed sale shall be served by Certified Mail on each debtor obligated to pay such debt, according to the records of Noteholder. Service of such notice shall be completed upon deposit of the notice enclosed in a prepaid wrapper, properly addressed to such debtor at the most recent address as shown by the records of the Noteholder, in a Post Office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. Grantors authorize and empower the Trustee to sell the Mortgaged Premises, together, or in lots or parcels, as the Trustee shall deem expedient, to execute and deliver to the purchaser or purchasers thereof good and sufficient deeds of conveyance thereto by fee simple title, with covenants of general warranty, (and the title of such purchaser, or purchasers, when so made by the Trustee, Grantors bind themselves to warrant and forever defend) and to receive the proceeds of said sale which shall be applied as follows, in the following order: (i) to all reasonable costs and expenses of the sale, including, but not limited to reasonable trustee's fees and attorney's fees and costs of title evidence; (ii) to all sums secured by this Deed of Trust; and (iii) the excess, if any, to Grantors or such other person or persons entitled thereto by law.

14.   The Noteholder shall have the additional right, upon the commencement of any action to enforce the lien herein given, to have appointed by the court, in which said action is instituted, a receiver to take possession of the premises and collect the said rents, issue, and profits arising from the Mortgaged Premises. This provision is a right created by this contract and is cumulative of, and is not to affect in any way, the right of the Noteholder to the appointment of a receiver given the Noteholder by law.

15.   If default be made in the payment of any installment of the Note, or any part thereof, or if for any reason (other than the fault of the Noteholder) Grantors fail to keep or perform any of the covenants, conditions or stipulations herein, the Noteholder shall have the option to proceed with foreclosure in satisfaction of such items, either through the courts or by directing the Trustee to proceed as if under a foreclosure, conducting the sale as herein provided and without declaring the whole debt due, and provided that if said sale is made because of such default, such sale may be made subject to the unmatured part of the Note and debt secured by this Deed of Trust, and such sale, if so made, shall not in any manner affect the unmatured part of the debt secured by this Deed of Trust, but, as to such unmatured part this Deed of Trust shall remain in full force as though no sale had been made under the provisions of this paragraph. Several sales may be made without exhausting the right of sale for any unmatured part of said debt, it being the purpose to provide for a foreclosure and sale of the Mortgaged Premises for any matured portion of said debt without exhausting the power of foreclosure and to sell the Mortgaged Premises for any other part of said debt whether matured at the time or subsequently maturing.

16.   In case of any sale hereunder, all prerequisites to the sale shall be presumed to have been performed, and in any conveyance given hereunder, all statements of facts, or other recitals therein made as to the nonpayment of money secured, or as to the request to the Trustee to enforce this trust, or as to the proper and due appointment of any substitute trustee, or as to the advertisement of sale, or time, place, and manner of sale, or as to any other preliminary fact or thing shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true.

17.   At the option of the Noteholder, with or without any reason, a successor substitute trustee may be appointed by the Noteholder without any formality other than a designation in writing of a successor or substitute trustee, who shall thereupon become vested with and succeed to all the powers and duties given to the Trustee herein named, the same as if the successor or substitute trustee had been named original Trustee herein, and such right to

**DEED OF TRUST**
4860-6185-2449.1

Page 5

appoint a successor or substitute trustee shall exist as often and whenever the Noteholder desires. If the Noteholder is a corporation, the corporation may act through any authorized officer, or by an agent or attorney in fact properly authorized by any such officer.

18.     Neither the exercise of, nor the failure to exercise, any option given under the terms of this Deed of Trust shall be considered as a waiver of the right to exercise the same, or any other option given herein, and the filing of a suit to foreclose this Deed of Trust, either on any matured portion of the debt or for the whole debt, shall never be considered an election so as to preclude foreclosure under the power of sale after a dismissal of the suit; nor shall the filing of the necessary notices for foreclosure, as provided in this Deed of Trust, preclude the prosecution of a later suit thereon.

19.     Any sale of the Mortgaged Premises under this Deed of Trust shall, without further notice, create the relation of landlord and tenant at sufferance between the purchaser and Grantors or any person holding possession of the Mortgaged Premises through Grantors, and upon failure of Grantors or such person to surrender possession thereof immediately, Grantors or such person may be removed by a writ of possession of the purchaser, either in the Justice Court having venue or in any other Court hereafter having venue.

20.     Nothing herein contained shall be so construed or operate as to require Grantors to pay interest on the Note or Notes, or any other liability or debt now existing or hereafter to exist hereunder at a rate greater than that allowed by the Laws of the State of Texas, and if any provisions herein contained do, or would, presently or prospectively, operate to make this Deed of Trust or any part thereof void, voidable or ineffective, then such provisions only shall be held for naught and as though not herein contained and shall be without effect upon or prejudice to the remaining provisions, which shall nevertheless remain operative. Any of said contracts for interest shall be held subject to reduction to the highest amount allowed under the Usury Laws of the State of Texas as now or hereafter construed by courts having jurisdiction.

21.     In the event of the passage after the date of this instrument of any law, which deducts any lien on the Mortgaged Premises from the value of the Mortgaged Premises for the purposes of taxation of deeds of trust or debts secured thereby, for state or local purposes, or which law changes the manner of collection of any such taxes so as to affect the interest of the Noteholder, the whole sum secured by this instrument with interest thereon, at the option of the Noteholder, shall immediately become due, payable and collectible without notice to any party.

22.     If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Mortgaged Premises, the unsecured or partially secured portion of the debt shall be completely paid prior to the payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust.

23.     Whenever used the singular number shall include the plural, the plural the singular, the use of any gender shall include all genders. The words "Grantors" and "Noteholder" shall include their heirs, executors, administrators, successors and assigns and the word "Trustee" shall include his respective successors and substitute trustees.

24.     Noteholder shall have the right to become the purchaser at all sales to enforce this trust, being the highest bidder, and to have the amount for which such property is sold credited on the debt then owing.

25.     Grantors will pay all reasonable attorneys' fees and expenses which may be incurred by the Noteholder or Trustee, in enforcing the terms of the Note and this Deed of Trust, or in any suit to which the Noteholder or Trustee may become a party where the Deed of Trust or the Mortgaged Premises are in any manner involved and all expenses incurred in presenting a claim against the estate of a decedent or a bankrupt and will also pay any attorney's fees and expenses reasonably incurred in connection with the assignment to Noteholder of any leases subsequently entered into by Grantors which by the terms hereof are required to be assigned to Noteholder as additional collateral to secure payment of the indebtedness herein secured as well as any and all such fees and expenses reasonably incurred prior to full and final payment of such indebtedness relating to future advances, transfer of title to the premises and similar matters not otherwise provided for herein.

**DEED OF TRUST**                                                                                                            **Page 6**
4860-6185-2449.1

26. With respect to any personal property herein described this Deed of Trust shall constitute a Security Agreement between Grantors and Noteholder, and cumulative of all other rights of Noteholder hereunder, Noteholder shall have all of the rights conferred upon secured parties by the Uniform Commercial Code, as amended, as to this property. This Deed of Trust, as a Financing Statement, covers the following types of property: Minerals, crops and goods that are, or are to become, fixtures are more fully described herein, and related to the real estate described therein, and it is intended that as to those goods and the proceeds thereof, this Deed of Trust shall be effective as a Financing Statement filed as a mineral, crop and fixture filing from the date of its filing for record in the Real Estate Records of the County in which the land is located. Information concerning the security interest created by this instrument may be obtained from the holder of the indebtedness and secured party at the Post Office address as shown in paragraph numbered 1 of this Deed of Trust. Until the lien of this Deed of Trust is released or satisfied of record, Grantors agree, if requested by Noteholder so to do, to execute one or more Financing Statements covering such personal property, in the manner and form required by law and to the satisfaction of Noteholder. Grantors agree to pay Noteholder's charge, to the maximum amount permitted by law, for any statement by Noteholder regarding the obligations secured by this Deed of Trust, requested by Grantors or on behalf of Grantors. On demand, Grantors will promptly pay all costs and expenses of filing Financing Statements, continuation statements, partial releases and termination statements deemed necessary or appropriate by Noteholder to establish and maintain the validity and priority of the security interest of Noteholder or any modification thereof, and all costs and expenses of any searches reasonably required by Noteholder. Noteholder may exercise any or all of the remedies of a secured party available to it under the Uniform Commercial Code, as amended, with respect to such personal property, and it is expressly agreed that if upon default Noteholder should proceed to dispose of the collateral in accordance with the provisions of the Uniform Commercial Code, as amended, ten (10) days notice by Noteholder to Grantors shall be deemed to be reasonable notice under any provision of the Uniform Commercial Code, as amended, requiring such notice; provided, however, that Noteholder may at its option dispose of the collateral in accordance with Noteholder's rights and remedies in respect of the real property pursuant to the provisions of this Deed of Trust, in lieu of proceeding under the Uniform Commercial Code, as amended.

27. Grantors, upon execution and delivery of this Deed of Trust and the Note hereby secured, were informed that Paragraph 13 hereof grants a power of sale and provides for summary foreclosure procedure at the election of the Noteholder in event of default. And a condition precedent to obtaining the loan represented by the Note hereby secured, Grantors specifically waive the right to procedural due process, i.e. notice and opportunity to be heard in a judicial proceeding in a court having jurisdiction of the parties and the subject matter prior to commencement of such proceedings under the power of sale herein granted.

28. In the event Grantors, or any owner of the Mortgaged Premises, without first obtaining approval of Noteholder (which approval shall be in Noteholder's sole discretion), should sell, transfer, convey, further encumber, or otherwise dispose of the Mortgaged Premises, or any part thereof, at any time before this Deed of Trust is fully released and discharged, Noteholder shall have the option to declare the indebtedness hereby secured due and payable and if the same is not paid within ten (10) days after the same is declared due and payable, Noteholder may request the Trustee to commence foreclosure proceedings as hereinbefore provided in Paragraph 13, or may commence any other action authorized by this Deed of Trust to enforce the liens herein given. Failure to exercise this option shall not be considered as a waiver of the rights conferred in this Paragraph 28, but said option may be exercised at any time.

29. Any default by Grantors of any other indebtedness of Grantors to Noteholder shall be deemed an event of default hereunder, entitling Noteholder to exercise all rights and remedies hereunder.

30. In the event an interest in any of the Mortgaged Premises is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Grantor agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Grantor agrees that Noteholder shall be entitled to seek a deficiency judgment from Grantor and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Mortgaged Premises was sold pursuant to judicial or nonjudicial foreclosure sale. Grantor expressly recognizes that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Grantor, and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Mortgaged Premises as of the date of the foreclosure sale and offset against any

deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Grantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Mortgaged Premises for purposes of calculating deficiencies owed by Grantor, or any guarantor, and others against whom recovery of a deficiency is sought.

31.    a.    TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO: (I) KEEP THE MORTGAGED PREMISES INSURED AGAINST DAMAGE IN THE AMOUNT NOTEHOLDER SPECIFIED: (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER: AND (III) NAME NOTEHOLDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) GRANTOR MUST, IF REQUIRED BY NOTEHOLDER, DELIVER TO NOTEHOLDER A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), NOTEHOLDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT THE GRANTOR'S EXPENSE.

b.    Without limiting the requirements of this Deed of Trust, Grantor has taken and shall continue to take until the Indebtedness is fully repaid and all Obligations are performed in full, such measures as are required by any and all Anti-Terrorism Laws to assure Noteholder that the funds invested in Grantor and/or used to make payments of the Indebtedness and/or the Obligations are derived from (a) transactions and sources that do not violate any Anti-Terrorism Laws nor, to the extent such funds originate outside the United States, do not violate the laws of the jurisdiction from which they originated; and (b) permissible sources under Anti-Terrorism Laws or, to the extent such funds originate outside the United States, under the laws of the jurisdiction from which they originated. If Noteholder reasonably believes that Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties may have breached any of the representations, warranties or covenants set forth in this Deed of Trust or the other Loan Documents relating to any Anti-Terrorism Laws or the identity of any person or entity as a Prohibited Person, then, Noteholder shall have the right, with or without notice to Grantor, to (1) notify the appropriate Governmental Authority and to take such action as such Governmental Authority or applicable Anti-Terrorism Law may direct; (2) withhold advances and segregate the assets constituting the Loan or any of Grantor's funds or assets deposited with or otherwise controlled by Noteholder pursuant to the Loan Documents; (3) decline any payment (or deposit such payment with an appropriate United States Governmental Authority or court) or decline any prepayment or consent request; and/or (4) declare an Event of Default and immediately accelerate the Indebtedness in connection therewith. Grantor agrees that none of Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties will assert any claim (and hereby waives, for itself and on behalf of the foregoing parties any claim it may now or hereafter have) against Noteholder or any of its affiliates, successors, assigns, representatives or agents for any form of damages as a result of the foregoing actions, regardless of whether or not Noteholder's reasonable belief is ultimately demonstrated to be accurate or not. Grantor acknowledges and understands that Noteholder may be required, and in such case hereby authorizes Noteholder to obtain, verify and record information that identifies Grantor, Guarantor, Constituent Party and any other affiliate or related person or entity to the foregoing parties, which information may include the names and addresses of such parties and other information that will allow Noteholder to identify such parties in accordance with the requirements of certain Anti-Terrorism Laws. None of Grantor, Guarantor, Constituent Party nor any person owning any interest in Grantor, Guarantor or Constituent Party (i) is a Prohibited Person, or (ii) has violated any Anti-Terrorism Laws. None of the funds of Grantor, any Constituent Party or Guarantor have been derived from any activity in violation of or prohibited by any Anti-Terrorism Laws. If at any time Grantor obtains knowledge that Grantor, any Constituent Party or Guarantor is, or becomes, a Prohibited Person or are indicted, arraigned or custodially detained on charges or allegations involving or relating to any Anti-Terrorism Laws, Grantor shall immediately notify Noteholder of same. Grantor shall upon request promptly deliver, or shall cause any Guarantor or Constituent Party to promptly deliver, to Noteholder any reasonable evidence (including any requested certifications) confirming compliance by all such parties with all Anti-Terrorism Laws and confirming that none of such parties (nor any person owning an interest in Grantor, Guarantor or any Constituent Party) is a "Prohibited Person."

c.    The following terms shall be defined as follows:

**DEED OF TRUST**
4860-6185-2449.1

(i)      Anti-Terrorism Laws: Any and all present or future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, orders and ordinances of any Governmental Authority relating to terrorism or money laundering, including, without limitation, the United and Strengthening America By Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Pub. L. No. 107-56); the Trading With the Enemy Act (50 U.S.C.A. App 1 et seq.); the International Emergency Economic Powers Act (50 U.S.C.A. §1701-1706); Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001 and the United States Treasury Department's Office of Foreign Assets Control list of "Specifically Designated and Blocked Persons" (as published from time to time in various mediums).

(ii)     Constituent Party:  Any (i) general partner, manager or managing member of Grantor, as applicable, and (ii) signatory to this Deed of Trust on Grantor's behalf that is an entity or other business organization.

(iii)    Prohibited Person:  Any person or entity that (i) is specifically named or listed in, or is otherwise subject to, any Anti-Terrorism Laws; (ii) is owned or controlled by, or acting for or on behalf of any person or entity specifically named or listed, or otherwise subject to, any Anti-Terrorism Laws; (iii) Noteholder is prohibited from dealing with, or engaging in any transaction with, pursuant to any Anti-Terrorism Laws; or (iv) is affiliated with any person or entity described in clauses (i) through (iii) of this definition.

32.      This Deed of Trust secures future advances to be used for construction of improvements on the Mortgaged Premises.  Accordingly, this Deed of Trust constitutes a "construction mortgage" under the Texas Uniform Commercial Code.  This Deed of Trust shall also constitute a "fixture filing" for the purposes of the Texas Uniform Commercial Code.  All or part of the Mortgaged Premises are or are to become fixtures; information concerning the security interest herein granted may be obtained from the parties hereto at the addresses set forth on the first page hereof.  For purposes of the security interest herein granted, the address of Grantors and the address of the Noteholder is set forth herein.

33.      Grantor hereby acknowledges and confirms that no portion of the Mortgaged Premises constitutes any portion of Grantor's homestead, and this lien is being granted for commercial purposes.

34.      Noteholder shall have the right from time to time to place a sign on the Mortgaged Property that financing has been provided by Noteholder.  The sign shall be of such size, and contain such information, as Noteholder may reasonably require.  Such signage shall be subject to applicable law and deed restrictions, if any.

**EXECUTED** as of the 23rd day of May, 2022.  **(DO NOT REVISE DATE)**

> **Rolltide Realty, LLC**
> **a Texas limited liability company**
>
> By: _Joshua L. Patterson_ , Member
>     Joshua L. Patterson
> Its:    Member

**STATE OF TEXAS**                     §
                                       §
**COUNTY OF** Tarrant                  §

This instrument was acknowledged before me on this _23_ day of _May_, 20_22_ by **Joshua L. Patterson**, Member of **Rolltide Realty, LLC**, a Texas limited liability company, on behalf of said entity.

> LAURIE HOLMSTROM
> Notary Public, State of Texas
> Comm. Expires 03-07-2026
> Notary ID 131479489

_Laurie Holmstrom_
Notary Public in and for the State of Texas
Laurie Holmstrom

**DEED OF TRUST**                                                                 **Page 9**
4860-6185-2449.1

## LOAN AGREEMENT RIDER

      THIS LOAN AGREEMENT RIDER is made as of this **23rd** day of **May, 2022**, and is incorporated by and into and shall be deemed to amend and supplement any and all documents constituting "Loan Agreements" as defined by Section 26.02 of the Texas Business & Commerce Code by and between **Rolltide Realty, LLC, a Texas limited liability company** ("Borrower"), and **WILDCAT LENDING FUND ONE, LP, a Texas limited partnership** ("Lender"), of the same date and covering the property described on Exhibit "A" attached hereto and incorporated herein by this reference for all purposes, said loan being evidenced by a certain Real Estate Lien Note ("Note") of even date herewith, executed by Borrower, payable to the order of Lender, in the original principal amount of **$139,500.00**.

      In addition to the covenants made in the Note and all related loan documents ("Loan Documents"), Borrower and Lender further covenant and agree as follows:

1.     The rights and obligations of Borrower, Guarantor and Lender shall be determined solely from the written Loan Documents, and any prior oral agreements between Lender, Guarantor and Borrower are superseded by and merged into the Loan Documents.

2.     The Loan Documents may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements.

3.     The following Notice is provided pursuant to Section 26.02 of the Texas Business & Commerce Code:
**THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

      **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**BORROWER:**

**Rolltide Realty, LLC**
**a Texas limited liability company**

By: _Joshua L. Patterson, Member_
    Joshua L. Patterson
Its:    Member

**GUARANTOR(S):**

_Joshua L. Patterson_
Joshua L. Patterson

_Alan Villalobos_
**Alan Villalobos**

**LENDER:**
**WILDCAT LENDING FUND ONE, LP**
**a Texas limited partnership**
**4800 Dexter Dr.**
**Plano, Texas 75093**

By: **Wildcat Lending Fund One GP, LLC**
    **a Texas limited liability company**
    **General Partner**

    By: **Wildcat Lending, LLC**
        **a Texas limited liability company**
        **Manager**

        By: _____

        Its: _____

1028 E. Bowie St., Ft. Worth, TX 76104
**LOAN AGREEMENT RIDER - TX**                        **Page 1**
4874-8798-1345.1

## Exhibit C

**Notice of Default**



MICHAEL E. GILLMAN
DIRECT NO. 469.320.6048
MGILLMAN@GRAYREED.COM

February 27, 2023

**VIA CMRRR 7021 0350 00000 5391 3696
AND VIA FIRST CLASS MAIL**
Rolltide Realty, LLC
1910 Crestridge Drive
Arlington, TX 76013

**VIA CMRRR 7021 0350 0000 5391 3689
AND VIA FIRST CLASS MAIL**
Joshua L. Patterson
1910 Crestridge Drive
Arlington, TX 76013

**VIA CMRRR 7021 0350 0000 5391 3672
AND VIA FIRST CLASS MAIL**
Alan Villalobos
1316 Norman Street
Fort Worth, TX 76106

Re:   Notice of default and demand for payment of unpaid sums due and owing pursuant to the following instruments, among others (collectively, and with all other documents executed in connection therewith the "Loan Documents"):

**Deed of Trust:**
Dated:                     May 23, 2022
Original Grantor:    Rolltide Realty, LLC
Trustee:                  Michael E. Gillman
Lender:                   Wildcat Lending Fund One, LP, a Texas limited partnership
Recorded In:           Tarrant County, Texas under Instrument No. D222133633
Secures:                 Real Estate Lien Note in the original principal amount of $139,500.00, executed by Rolltide Realty, LLC, (whether one or more, "Borrower"), dated May 23, 2022 (the "Note") and guaranteed by Alan Villalobos and Joshua L. Patterson.

Dear Rolltide Realty, LLC, Alan Villalobos and Joshua L. Patterson:

This letter is written at the request and on behalf of Lender, WILDCAT LENDING FUND ONE, LP, a Texas limited partnership ("Lender"). As you are aware, the Note matured on February 23, 2023. Borrower has failed to make payment in the full principal amount due under the Note in accordance with the terms thereof. As of the date hereof, there is past due and owing principal in the amount of $139,500.00, accrued but unpaid interest, and other costs and sums due to Lender under the Loan Documents in the amount of $7,110.48, being a total amount due Lender, as of the date hereof, of $146,610.48.

Rolltide Realty, LLC
Page 2

Borrower and each other party obligated on the Note are herein provided notice that Borrower's failure to timely pay amounts due under the Note constitutes a default under the terms of the Loan Documents. Demand is hereby made for immediate payment in full of all past due and unpaid principal, together with all lawful accrued and unpaid interest due under the Note, as of the date of payment, and any other sums due to Lender, including but not limited to, attorneys' fees, on or before **March 9, 2023 at 5:00 p.m.,** by cashier's check, at the offices of Lender at 4800 Dexter Drive, Plano, Texas 75093, or by wire transfer in accordance with instructions furnished by Lender.

If payment of all past-due amounts then currently due and owing under the Note are not received by Lender by the time and date stated above, Lender intends to: (1) enforce payment of the Note against Borrower and each other person or entity obligated therefor; (2) commence nonjudicial proceedings to foreclose the property, if any, described in the Deed of Trust, pursuant to the power of sale existing under the Deed of Trust; and (3) exercise some or all of the other rights and remedies available to Lender under the Loan Documents, at law, or in equity.

If any party who receives this letter is a debtor in a bankruptcy proceeding subject to the provisions of the United States Bankruptcy Code (Title 11 of the United States Code) (the "Bankruptcy Code"), this letter is merely intended to provide written notice of the defaults under the Note in compliance with the Loan Documents and applicable law. This letter is not an act to collect, assess, or recover a claim against that party, nor is this letter intended to violate any provisions of the Bankruptcy Code. Any and all claims that Lender asserts against that party will be properly asserted in compliance with the Bankruptcy Code in the bankruptcy proceeding. In addition, all of Lender's claims, demands and accruals regarding the Loan Documents, whenever made, and whether for principal, interest, or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable usury laws, and are accordingly limited so that all applicable usury laws are not violated.

Nothing contained in this letter is intended to waive any default, or any rights, remedies, or recourses available to Lender, or constitute an election of remedies resulting from any default that may exist with respect to the Loan Documents. Lender expressly reserves all of its rights and remedies under the Loan Documents, at law, and in equity.

You may contact **WILDCAT LENDING FUND ONE, LP at 4800 Dexter Drive, Plano, Texas 75093 or call 972-525-4777 Ext 216**, regarding any questions that you may have, including the outstanding balance of the past due amounts on the Note as of any particular date. If you have any questions that you believe I can answer, you or your attorney may contact me at the telephone number or address listed below.

**THIS LETTER IS FROM AN ATTORNEY DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT AND/OR ENFORCE A LIEN AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**\*\* PLEASE TAKE NOTICE \*\***

The Department of Housing and Urban Development (HUD) has approved certain experienced counseling organizations to provide home ownership counseling to qualified borrowers. Home ownership counseling is available free of charge. You may obtain a list of HUD approved Counseling Agencies by calling toll free at 1-800-569-4287. You should contact one of

Rolltide Realty, LLC
Page 3

the HUD Counseling Agencies or your local HUD office for more information about these counseling services. **If this loan delinquency continues, you could lose your home.**

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

Sincerely,

Gray Reed & McGraw LLP


By:  ___*/s/ Michael E. Gillman*_____
        Michael E. Gillman



cc:      Tara Moreno, Wildcat Lending Fund One, LP (*via email*)

## Exhibit D

**Notice of Foreclosure Sale**



**MICHAEL E. GILLMAN**
**DIRECT NO. 469.320.6048**
MGILLMAN@GRAYREED.COM

March 10, 2023

**Via CMRRR#7022 0410 0001 7097 7755**
**and Via First Class Mail**
Rolltide Realty, LLC
1910 Crestridge Drive
Arlington, TX 76013

**Via CMRRR#7022 0410 000 7097 7762**
**and Via First Class Mail**
Joshua L. Patterson
1910 Crestridge Drive
Arlington, TX 76013

**Via CMRRR#7022 0410 0001 7097 7779**
**and Via First Class Mail**
Alan Villalobos
1316 Norman Street
Fort Worth, TX 76106

       Re:    **NOTICE FORECLOSURE SALE** regarding the following instruments, among others (collectively, the "Loan Documents"):

**Deed of Trust:**

| | |
|---|---|
| Dated: | May 23, 2022 |
| Original Grantor: | Rolltide Realty, LLC |
| Trustee: | Michael E. Gillman |
| Lender: | Wildcat Lending Fund One, LP, a Texas limited partnership |
| Recorded In: | Tarrant County, Texas under Instrument No. D222133633 |
| Secures: | Real Estate Lien Note in the original principal amount of $139,500.00, executed by Rolltide Realty, LLC, (whether one or more, "Borrower"), dated May 23, 2022 (the "Note") and guaranteed by Alan Villalobos and Joshua L. Patterson. |

**Property:**       The property to be sold includes all real property, personal property, and fixtures set forth in the Deed of Trust, including, without limitation, the property described as follows (collectively, the "Property"):

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

More commonly known as:    1028 E. Bowie Street
Fort Worth, TX 76104

4855-7433-4550.1

Dear Rolltide Realty, LLC, Alan Villalobos and Joshua L. Patterson:

This letter is written at the request and on behalf of Lender, Wildcat Lending Fund One, LP, a Texas limited partnership ("Lender"). Written notice (the "Default Notice") dated February 27, 2023, was served on Rolltide Realty, LLC ("Borrower"), Alan Villalobos and Joshua L. Patterson ("Guarantors") by Gray Reed & McGraw, LLP, on behalf of Lender, by certified mail, return receipt requested, informing Borrower and the other obligors on the Note of the existence of one or more payment defaults under the Note and the Deed of Trust (collectively, "Defaults"). The Note, among other things, constitutes part of the indebtedness secured by the Deed of Trust ("Indebtedness"). In the Default Notice, demand was made on Borrower to pay the unpaid past due amounts then owing under the Note, and Borrower and the other obligors were advised of Lender's intention to commence nonjudicial proceedings to foreclose on the Property, pursuant to the Deed of Trust, if the Defaults were not cured.

According to the records of Lender, Borrower has not cured the Defaults. Therefore, Lender, makes demand (1) on Borrower and on all other obligors on the Note (except to the extent that any such obligation is expressly limited by written contract or applicable law) for payment in full of the entire Indebtedness and (2) on Grantor for payment of rents and proceeds of any rents to which Lender is entitled under the Loan Documents and Chapter 64 of the Texas Property Code (Assignment of Rents to Lienholder).

Each of David Stockman, Donna Stockman, Brenda Wiggs, Guy Wiggs, Kathy Arrington, Janet Pinder, Brandy Bacon, Michelle Schwartz and Jamie Dworsky has been appointed a Substitute Trustee to sell the Property at a nonjudicial foreclosure sale ("Foreclosure Sale"). **A COPY OF THE NOTICE OF FORECLOSURE SALE ("FORECLOSURE NOTICE") SPECIFYING THE DATE, TIME, PLACE, AND TERMS OF THE FORECLOSURE SALE IS ENCLOSED WITH THIS LETTER.** If all amounts due and owing have not been paid, or if other arrangements satisfactory to Lender in its sole discretion have not then been made, by **5:00 p.m. CST on April 3, 2023**, Substitute Trustee will conduct the Foreclosure Sale on the date and at the time and place specified in the Foreclosure Notice, as authorized by and in accordance with the provisions of the Deed of Trust and applicable law.

If the proceeds of the Foreclosure Sale are insufficient to repay the Indebtedness, then each person and entity obligated to repay the Indebtedness will be jointly and severally liable for the deficiency.

If any party who receives this letter is a debtor in a bankruptcy proceeding subject to the provisions of the United States Bankruptcy Code (Title 11 of the United States Code) (the "Bankruptcy Code"), this letter is merely intended to be written notice of the Defaults in compliance with the Loan Documents and applicable law. This letter is not an act to collect, assess, or recover a claim against that party, nor is this letter intended to violate any provisions of the Bankruptcy Code. Any and all claims that Lender asserts against that party will be properly asserted in compliance with the Bankruptcy Code in the bankruptcy proceeding. In addition, all of Lender's claims, demands, and accruals regarding the Loan Documents, whenever made, and whether for principal, interest, or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable usury laws, and are accordingly limited so that all applicable usury laws are not violated.

Nothing contained in this letter is intended to waive any default, any event of default, or any rights, remedies, or recourses available to Lender or constitute an election of remedies resulting from any default that may exist with respect to the Loan Documents. Lender expressly reserves all of its rights and remedies under the Loan Documents, at law, and in equity.

**You may contact WILDCAT LENDING FUND ONE, LP at 4800 Dexter Drive Plano, Texas 75093 or call 972-525-4777 Ext 216, regarding any questions that you may have, including the outstanding balance of the past due amounts on the Note as of any particular date.** If you have any questions that you believe I can answer, you or your attorney may contact me at the telephone number or address listed below.

**THIS LETTER IS FROM AN ATTORNEY DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT AND/OR ENFORCE A LIEN/SECURITY INTEREST AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**\*\* PLEASE TAKE NOTICE \*\***

The Department of Housing and Urban Development (HUD) has approved certain experienced counseling organizations to provide home ownership counseling to qualified borrowers. Home ownership counseling is available free of charge. You may obtain a list of HUD approved Counseling Agencies by calling toll free at 1-800-569-4287. You should contact one of the HUD Counseling Agencies or your local HUD office for more information about these counseling services. **If this loan delinquency continues, you could lose your home.**

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Sincerely,

Gray Reed & McGraw LLP

By: ___*/s/ Michael E. Gillman*_____
       Michael E. Gillman

Encls.
cc:    Tara Moreno, Wildcat Lending Fund One, LP (*via email*)

## APPOINTMENT OF SUBSTITUTE TRUSTEE

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS |
| COUNTY OF TARRANT | § | |

Date:            March 9, 2023

Deed of Trust:

Date:              May 23, 2022

Grantor/Borrower:   Rolltide Realty, LLC

Trustee:            Michael E. Gillman

Beneficiary:        Wildcat Lending Fund One, LP, a Texas limited partnership

Recording
information:        Tarrant County, Texas under Instrument No. D222133633

Property:           The property includes all real property, personal property, and
                    fixtures set forth in the Deed of Trust, including, without limitation,
                    the property described as follows (collectively, the "Property"):

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN
ADDITION TO THE CITY OF FORT WORTH, TARRANT
COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT
THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT
RECORDS, TARRANT COUNTY, TEXAS.**

More commonly       1028 E. Bowie Street
known as:           Fort Worth, TX 76104

Mailing and Physical
Address of Beneficiary:   Wildcat Lending Fund One, LP, a Texas limited partnership
                          4800 Dexter Drive Plano, Texas 75093

Substitute Trustees and
Addresses:          David Stockman, Donna Stockman, Brenda Wiggs, Guy Wiggs,
                    Kathy Arrington, Janet Pinder, Brandy Bacon, Michelle Schwartz
                    and Jamie Dworsky.

                    4600 Fuller Avenue, Suite 400, Irving, TX 75038.

4873-0455-0486.1

The Deed of Trust provides that the Beneficiary may appoint multiple substitute trustees at any time or from time to time act instead of the aforementioned Trustee.

Beneficiary hereby removes the Trustee as trustee under the Deed of Trust and appoints each of David Stockman, Donna Stockman, Brenda Wiggs, Guy Wiggs, Kathy Arrington, Janet Pinder, Brandy Bacon, Michelle Schwartz and Jamie Dworsky as a Substitute Trustee under the Deed of Trust to act under and by virtue of the Deed of Trust.

EXECUTED effective as of the date set forth hereinabove.

<div style="margin-left: 40%;">

Wildcat Lending Fund One, LP,
a Texas limited partnership

By:    Wildcat Lending Fund One GP, LLC
a Texas limited liability company
General Partner

By:    Wildcat Lending, LLC
a Texas limited liability company
Manager

By: _____

Name:  Bryan Kaminski

Title:  Manager

</div>

THE STATE OF ___TEXAS___    §
                            §
COUNTY OF ___COLLIN___      §

This instrument was acknowledged before me on this 10th day of March, 2023, by ___Bryan Kaminski___, its ___Manager___.

_____
Notary Public in and for the State of Texas

SCHYLAR ELIZABETH FLANNERY
Notary Public, State of Texas
Comm. Expires 01-19-2026
Notary ID 133541318

(Seal)

## NOTICE OF SUBSTITUTE TRUSTEE'S FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**Deed of Trust:**

| | |
|---|---|
| Dated: | May 23, 2022 |
| Original Grantor: | Rolltide Realty, LLC |
| Trustee: | Michael E. Gillman |
| Lender: | Wildcat Lending Fund One, LP, a Texas limited partnership |
| Recorded In: | Tarrant County, Texas under Instrument No. D222133633 |
| Secures: | Real Estate Lien Note in the original principal amount of $139,500.00, executed by Rolltide Realty, LLC, (whether one or more, "Borrower"), dated May 23, 2022 (the "Note") and guaranteed by Alan Villalobos and Joshua L. Patterson. |

**Property:**     The property includes all real property, personal property, and fixtures set forth in the Deed of Trust, including, without limitation, the property described as follows (collectively, the "Property"):

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY, TEXAS.**

More commonly     1028 E. Bowie Street
known as:     Fort Worth, TX 76104

## Foreclosure Sale:

**Date:**     Tuesday, April 4, 2023

**Time:**     The Foreclosure Sale will be held between the hours of 11:00 A.M. and 2:00 P.M. local time. The Foreclosure Sale will begin no earlier than 11:00 A.M. or not later than three hours thereafter.

**Place:**     West side of the building of the Tarrant County Courthouse, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court.

**FILED**

MAR 1 3 2023

COUNTY CLERK, TAR....
BY

4893-1729-1350.1

4777463

**Terms of Sale:**   The Foreclosure Sale will be conducted as a public auction and the Property will be sold to the highest bidder for cash, except that Wildcat Lending Fund One, LP, a Texas limited partnership's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust.

**Substitute Trustee**:   The original Trustee has been removed, and the following persons have been appointed Substitute Trustees: David Stockman, Donna Stockman, Brenda Wiggs, Guy Wiggs, Kathy Arrington, Janet Pinder, Brandy Bacon, Michelle Schwartz and Jamie Dworsky. Said appointment is authorized by the Deed of Trust. Notice is given that, before the Foreclosure Sale, another person may be appointed as substitute trustee to conduct the Foreclosure Sale, and any of the foregoing Substitute Trustees may, acting alone, act under the Deed of Trust pursuant to the terms thereof.

**Default:**   Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust. Because of that default, Wildcat Lending Fund One, LP, a Texas limited partnership, the owner and holder of the Note, has requested a Substitute Trustee to sell the Property.

Formal notice is hereby given of Wildcat Lending Fund One, LP's election to proceed against and sell the Property in accordance with Wildcat Lending Fund One, LP's rights and remedies under the Deed of Trust and Section 9.604(a) of the Texas Business and Commerce Code.

Therefore, notice is given that on and at the Date, Time, and Place for the Foreclosure Sale, Substitute Trustee will sell the Property in accordance with the Terms of Sale described above, the Deed of Trust, and applicable Texas law.

If Wildcat Lending Fund One, LP passes the Foreclosure Sale for any reason, and chooses to repost the Property for a nonjudicial foreclosure sale, notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Deed of Trust and the Texas Property Code.

The Foreclosure Sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the Foreclosure Sale will necessarily be made subject to all prior matters of record affecting the Property, if any, to the extent that they remain in force and effect and have not been subordinated to the Deed of Trust. For the avoidance of doubt, the Foreclosure Sale will not cover any part of the Property that has been released of public record from the lien and/or security interest of the Deed of Trust by Wildcat Lending Fund One, LP. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold "AS IS" without any expressed or implied warranties, except as to the warranties (if any) provided for by Grantor under the Deed of Trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the Property. Pursuant to Section 51.0075(a) of the Texas Property Code, Substitute Trustee reserves the right to set further reasonable

4893-1729-1350.1

**FILED**

**MAR 1 3 2023**

COUNTY CLERK, TARRANT CO., TEXAS
BY_____DEPUTY

conditions for conducting the Foreclosure Sale. Any such further conditions shall be announced before bidding is opened for the Foreclosure Sale.

Dated: 3/13/23

Donna Stockman

Substitute Trustee
4600 Fuller Ave., Ste. 400
Irving, TX 75038

**FILED**

MAR 1 3 2023

COUNTY CLERK, TARRANT CO., TEXAS
BY_____DEPUTY

4893-1729-1350.1

## Exhibit E

**Beneficiary's Demand for Payoff**



Wildcat Lending Fund One, LP
4800 Dexter Drive
Plano, TX 75093

2/24/2023

Rolltide Realty, LLC
1028 E Bowie Street
Fort Worth, TX 76104
Account: 2205170000

## BENEFICIARY'S DEMAND FOR PAYOFF

Dear Rolltide Realty, LLC

You are authorized to use the following amounts to pay off the above-mentioned loan. Lender is not responsible for any errors in collection by any other party and Lender's lien if not fully released until all unpaid charges are received.

| Payoff Date | 2/24/2023 |
|---|---|
| Maturity Date | 2/22/2023 |
| Next Payment Due | 2/1/2023 |
| Interest Rate | 10.990% |
| Interest Paid-To Date | 1/1/2023 |
| Principal Balance | $139,500.00 |
| Unpaid Interest | $0.00 |
| Accrued Interest From 1/1/2023 To 2/24/2023 | $2,342.24 |
| Unpaid Late Charges | $0.00 |
| Accrued Late Charges | $63.88 |
| Unpaid Charges   *For additional details see itemization attached | $3,554.36 |
| Prepayment Penalty | $0.00 |
| Other Fees *For additional details see itemization attached | $50.00 |
| Trust Balance | -$0.00 |
| **Payoff Amount** | **$145,510.48** |

Please add **$42.59** for each additional day past **2/24/2023**.

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.  **Please note that this demand expires on 3/7/2023, or the maturity date, 2/22/2023, the earlier of the two,** at which time you are instructed to contact this office for an updated demand for payoff.

Sincerely,

Tara Moreno
Office Manager
972-525-4777 ext 216

tara@wildcatlending.com

**ITEMIZATION OF UNPAID CHARGES**

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|------|-------------|---------------|----------------|------------------|-----------|
| 11/30/2022 | 1st Auto Extend | 0.000% | $697.50 | $0.00 | $697.50 |
| 12/22/2022 | December 2022 Lender Placed | 0.000% | $420.62 | $0.00 | $420.62 |
| 12/28/2022 | 2nd Auto Extend | 0.000% | $697.50 | $0.00 | $697.50 |
| 01/16/2023 | January 2023 Lender Placed | 0.000% | $420.62 | $0.00 | $420.62 |
| 01/24/2023 | 3rd Auto Extend | 0.000% | $697.50 | $0.00 | $697.50 |
| 02/06/2023 | NSF Payment Charge | 0.000% | $200.00 | $0.00 | $200.00 |
| 02/21/2023 | Feburary 2023 Lender Placed | 0.000% | $420.62 | $0.00 | $420.62 |
| | | | | **Total** | **$3,554.36** |

**ITEMIZATION OF OTHER FEES**

| Description | Amount |
|-------------|--------|
| Demand Fee | $50.00 |
| Reconveyance Fee | $0.00 |
| Recording Fee | $0.00 |
| Forwarding Fee | $0.00 |
| **Total** | **$50.00** |

**<u>Exhibit F</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 23-40880-elm7** |
| **JOSHUA LEE PATTERSON,** | § | |
| | § | **Chapter 7** |
| Debtor. | § | |

**ORDER GRANTING WILDCAT LENDING FUND ONE, LP'S**
**UNOPPOSED MOTION FOR RELIEF FROM THE AUTOMATIC**
**STAY AGAINST REAL PROPERTY LOCATED IN TARRANT COUNTY, TEXAS**

Upon the Unopposed Motion for Relief from the Automatic Stay Against Real Property

Located in Tarrant County, Texas (the "Motion")[1] filed by Wildcat Lending Fund One, LP, and this

Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found

that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1409;

and this Court having found that Wildcat's notice of the Motion and opportunity for a hearing on

the Motion were appropriate under the circumstances and no other notice need be provided; and

this Court having determined that the legal and factual bases set forth in the Motion establish just

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The automatic stay under 11 U.S.C. § 362 is terminated, effective as of March 30,

2023, to allow Wildcat Lending Fund One, LP to exercise any or all of its rights and remedies

under applicable state and federal law, the Note, the Deed of Trust, and all other agreements

between Rolltide and Wildcat, including a sale by foreclosure, relating to the Property described

as:

**LOT 7, IN BLOCK 1, MORNINGSIDE TERRACE, AN ADDITION
TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN
VOLUME 388-L, PAGE 78, PLAT RECORDS, TARRANT COUNTY,
TEXAS.**

2.      Because the Motion was unopposed, the 14-day stay otherwise imposed by Fed. R.

Bankr. P. 4001(a)(3) shall not be applicable to this Order.

3.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

### End of Order ###

Submitted by:

Amber M. Carson
Texas Bar No. 24075610
London England
Texas Bar No. 24110313
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:      (214) 954-4135
Facsimile:      (214) 953-1332
Email:          acarson@grayreed.com
                lengland@grayreed.com

*Counsel to Wildcat Lending Fund One, LP*

2